### F. A. SCHOENFELD V. THE STATE.

No. 3984.   Decided May 5. 1909.

**1.—Perjury—Indictment—Construction of Contract.**

The general rule is where the statement which is the basis of the accusation is a matter of construction, or a deduction from given facts, the fact it is erroneous, or is not a correct construction, or is not a logical construction from all the facts cannot constitute it perjury or false swearing.

**2.—Same—Insufficient Pleading—Motion to Quash.**

Where in an indictment for perjury the same did not allege that the defendant denied that he had made any certain statement or that he had in terms promised to do any certain thing or that he had testified that he had made any particular statement, but was based on a statement of testimony as to his understanding or agreement; and did not set out the language used by the defendant or that of the parties with whom he was alleged to have made the contract, or in arriving at the alleged understanding and agreement, or to even set out the substance thereof, but merely set out the testimony of the defendant in a civil suit with reference to his construction of said agreement which was alleged to be false, the same was bad on motion to quash.

Appeal from the District Court of Karnes. Tried below before the Hon. James C. Wilson.

Appeal from a conviction of perjury; penalty, two years confinement in the penitentiary.

The opinion states the case.

*Nat B. Jones* and *Ed Haltom*, for appellant.—Cited cases in the opinion.

F. J. McCord, Assistant Attorney-General, for the State.

RAMSEY, JUDGE.—Appellant was convicted of perjury and his punishment assessed at two years in the penitentiary.

This is a very interesting case, and as the question is one of first impression in this State, we shall make a fuller statement of it than might ordinarily seem either necessary or desirable. The case is fairly well stated in appellant's brief and for the purposes of this opinion, though not stated with entire exactness, it is hereby adopted. It is as follows: "At the fall term of the District Court of Karnes County an indictment was presented against F. A. Schoenfeld, charging him with the offense of perjury. At the spring term of the court the appellant, F. A. Schoenfeld, presented to the court a motion to quash the indictment, which was overruled and to which ruling appellant excepted. The indictment assigns the alleged perjury upon the testimony given by appellant in a civil suit in the County Court of Karnes County in which suit appellant, F. A. Schoenfeld, was plaintiff and Karnes City Independent School Corporation was defendant. After setting out the pendency of the suit, jurisdiction of the court and that appellant was sworn, etc., the indictment charges: 'Whereupon it then and there became and was a material inquiry . . . whether there had been an understanding and agreement by and between said F. A. Schoenfeld and said Karnes City Independent School Corporation . . . at the time and before the execution of a certain written contract to the effect that said F. A. Schoenfeld bound and obligated himself to place in each window of a certain addition to the public school building then located in Karnes City, Texas, for the erection of which said addition said written contract was made, inside blinds which should slide up and down in grooves, similar to the blinds on the windows of the aforesaid public school building then located and in use in said Karnes City, Texas, and to which public school building said addition was to be made; and the said F. A. Schoenfeld did then and there . . . wilfully and deliberately state and testify in substance that there had not been any understanding or agreement by or between said F. A. Schoenfeld and said Karnes City Independent School Corporation or the authorized representatives thereof at the time or before the execution of a certain written contract to the effect that said F. A. Schoenfeld bound and obligated himself to place in each window of a certain addition to the public school building then located in said Karnes City, Texas, for the erection of which said addition said written contract was made, inside blinds which should slide up and down in grooves similar to the blinds on the windows of the aforesaid public school building then located and in use in said Karnes City, Texas, and to which public school building said addition was to be made, and which said statement was material to the issue in said cause; whereas in truth and in fact there had been an understanding and agreement by and between said F. A. Schoenfeld and said Karnes City Inde-

pendent School Corporation and the authorized representatives thereof at the time and before the execution of a certain written contract to the effect that said F. A. Schoenfeld bound and obligated himself to place in each window of a certain addition to the public school building, then located in said Karnes City, Texas, for the erection of which said addition said written contract was made, inside blinds which should slide up and down in grooves, similar to the blinds on the windows of the aforesaid public school building then located and in use in said Karnes City, Texas, and to which public school building said addition was to be made; which said statement     .    .    . was wilfully and deliberately false and said F. A. Schoenfeld knew the same to be false when he made it.' Upon a trial had at the fall term, 1908, there was a verdict of guilty fixing the punishment at confinement in the penitentiary for the period of two years. A motion for a new trial was presented and overruled, and the case appealed to this court.

"In May, 1907, there was pending in the County Court of Karnes County a civil suit in which F. A. Schoenfeld was plaintiff and Karnes City Independent School Corporation was defendant. The case was tried on May 24, 1907, said court having jurisdiction of the case. · F. A. Schoenfeld was legally sworn as a witness and testified upon the trial. On June 12, 1906, the parties had entered into a written contract by which the appellant, F. A. Schoenfeld, was to 'provide all material and perform all work mentioned in the specifications and as shown on the drawings for a three room addition to the public school building of the town of Karnes City, Texas, .    .    . which said drawings and specifications have been heretofore agreed upon and identified by the signatures of the parties.' The contract by art. 3 recited: 'No alterations shall be made in the work shown or described by the drawings and specifications except upon a written order of the president of the board of trustees.' On the question of blinds for the addition the original typewritten specification was as follows: 'Victoria Venetian Blinds. Place and hang on all windows inside. Venetian Blinds with rolling slats. Put on attachment and fasteners to leave the blinds in good working order.' The above specification was scratched out by running over it a lead pencil, and in its place was written in lead pencil the words, 'All windows to have Venetian Blinds.' Prior to the signing up by the parties appellant and the members of the board of trustees met in the office of the county judge in the courthouse at Karnes City, and we will let the different witnesses show what occurred: C. H. Baxter, a trustee, after naming different trustees testified, we met in the county judge's office in this building on Saturday, we did not complete the details and we were to meet Monday at Dr. Pickett's residence to complete the contract. In county judge's office we discussed specifications, and alterations were made; when we got to the blinds it was read off, 'Victoria Venetian

Blinds.' . . . Someone asked Mr. Schoenfeld what kind of blinds those were and he pointed to the blinds in Judge Parker's office and said, 'They are like them.' Some member of the board said we don't want them; we want blinds that fit inside of the windows in sections and that move up and down. We did not know the name of the blinds at all; we told him we wanted blinds that move up and down in grooves, and they were to be in three sections. Schoenfeld said he understood the kind we wanted and he erased the original specification and made an alteration which was to cover the blind we wanted. The alteration is, 'all windows to have Venetian Blinds.' J. P. Rhodes testified, he was a member of board of school trustees and was present at discussion of specifications in Judge Parker's office, and when the blinds were discussed. When we came to Victoria Venetian Blinds we did not know what they were, and we told Schoenfeld we wanted blinds like those in the old schoolhouse, and then Schonfeld checked that 'Victoria Venetian Blinds' out and wrote it 'Venetian Blinds;' he wrote into the specifications, 'All windows to have Venetian Blinds.' Schoenfeld said the blinds we wanted were Venetian Blinds. We told him we wanted blinds that run up and down in a frame like those in the old schoolhouse. There was no more said on that subject. Mr. Lou Bailey, one of the trustees, testified he was present at conversation between Schoenfeld and board of trustees at Judge Parker's office when Schoenfeld called Victoria Venetian Blinds; he said something about their being like those on the courthouse, and Dr. Pickett stopped him and told him it was not the kind we wanted, that we wanted blinds like those in the school building, and Schoenfeld said 'all right,' and erased that Victoria and just left it Venetian Blind. He made no objection at all, just said, 'all right, gentlemen,' or something like that, and put it down. Dr. King, superintendent of board of trustees, testified Schoenfeld explained that Victoria Venetian Blinds was the kind then in the courthouse—this was in office of county judge; the board all objected to that kind of blinds and explained what we wanted; we told him we wanted blinds in sections that slide up and down in grooves like the ones in the old building, Schoenfeld then erased the typewritten specification and wrote in 'all windows to have Venetian Blinds.' Dr. W. S. Pickett testified he was president of the board of trustees on May 24, 1909. Prior to execution of contract was present at a conference in Judge Parker's office between the board and Schoenfeld. When we reached the specification relative to Victoria Venetian Blinds some member asked Schoenfeld what kind of blinds they were and he pointed to the blinds in Judge Parker's office and said they were Victoria Venetian Blinds (slats fastened together with tape and raised and lowered by a string). I stopped him and said, 'We don't want that; we want the same blinds that we have in the old building, which sets in a frame, in three sections and works in grooves, each blind separately, you can

let it down from top, bottom or middle.' I explained that we did not want Victoria Venetian Blinds; that it was not a duplicate of the blinds we had, and Schoenfeld said 'very well,' and he just marked out Victoria Venetian Blinds and wrote above it Venetian Blinds; we did not know those terms, but knew what we wanted and told him what we wanted; we described the blinds we wanted to him.

"The above is about all of the testimony as to the alleged understanding and agreement before the execution of the written contract 'to the effect that F. A. Schoenfeld was bound,' etc. Upon the trial of the civil suit Schoenfeld testified as a witness. As to what his testimony was, let the witness speak. Judge A. J. Parker, the county judge, says: 'One of the issues in the case was with reference to the kind of blinds that were put in the schoolhouse.' The defendant here took the stand and testified that he had a contract to put in Venetian Blinds that rolled up with a string and which were made up of slats fastened on strips of cloth to be drawn up and let down with a string. The defendant, the corporation, in that case claimed that the contract called for inside, three section, sliding blinds that worked in grooves. J. L. Brown, attorney for corporation, upon the trial in County Court testified, Mr. Schoenfeld testified that some members of the board wished him to agree to put in a sliding blind and that he absolutely refused, positively refused, to agree to any such thing. I think that his language was that he told them he would throw up his contract before he would agree to do it. Schoenfeld said the discussion about the blinds did not occur in Judge Parker's office, but at the residence of Dr. Pickett. J. Albert King, an attorney for the school corporation, upon trial in the County Court, testified, Mr. Schoenfeld testified that when the discussion of the blinds came up when they were going over the specifications the board of trustees told him they wanted three section, sliding blinds that worked in grooves and that he told them he would not put in that kind of a blind, and that he would throw up his contract before he would agree to it. He said he never did agree to put in the three section, sliding blind. Dr. W. S. Pickett testified, I heard the testimony on trial of the case in the County Court. He testified that he did not make the contract to furnish the sliding blinds. He said he was to furnish Victoria Venetian Blinds. He denied having agreed to the blinds in Judge Parker's office. He said when we met in my house after the meeting in Judge Parker's office that he told us positively that he would throw up his contract before he would put in sliding blinds. He said he did not agree to put in the blinds we had in the old building as we expected."

A number of errors are assigned, but it becomes unnecessary in our view of the case to notice more than one question which is presented in several forms. The general proposition is submitted

that perjury can not be assigned upon the construction of a contract, either oral or written, and that the court erred in overruling appellant's motion to quash the indictment because in fact the pretended perjury is assigned upon the construction by defendant of an oral understanding and agreement. The claim is made that the indictment charges substantially that appellant wilfully and deliberately testified that there had not been any understanding or agreement at the time or before the execution of a certain written contract or agreement *to the effect* he had bound and obligated himself to place in each window of a certain addition . . . for the erection of which said addition said written contract was made, inside blinds which should slide up and down in grooves, etc. In other words, that appellant swore that the "understanding and. agreement" did not have the effect, nor did it mean that he had so bound and obligated himself. It will be noticed that the indictment does not allege that appellant denied that he had made any certain statement or that he had in terms promised to do any certain thing, nor did he testify that he had made any particular statement, but seems to be based on a statement of testimony as to his understanding or agreement. It will be noticed that the indictment does not pretend to set out the language used by appellant, the members of the board of trustees, or either of them in arriving at the alleged understanding and agreement, nor does it pretend to set out the substance of what was said and done to constitute the agreement and understanding, but merely the testimony of the appellant with reference to there being an understanding and agreement to the effect that appellant was bound and obligated to do certain things. We think the rule is well settled and correctly settled that an indictment for perjury should in terms set out and charge the substance of the testimony upon which the perjury is assigned and not the conclusion of the pleader or the meaning of the testimony. The general rule is thus stated in 30 Cyclopedia of Law and Procedure, page 1405: "Where the statement which is the basis of the accusation is a matter of construction, or a deduction from given facts, the fact that it is erroneous, or is not a correct construction, or is not a logical deduction from all the facts, can not constitute it perjury or false swearing. A witness can not be guilty of perjury in giving his opinion as to the legal effect of facts about which he is required to testify. Thus a misconception or mistake in swearing to the construction of a written instrument is not sufficient to warrant a conviction of perjury." To the same effect is Mr. Bishop, vol. 2, sec. 1040, where he says: "Growing, it may be, out of the difficulty of proof, the doctrine is laid down, that perjury can not be committed in testimony to the legal construction of a written instrument." The most recent case discussing this matter and which clearly supports appellant's contention is that of Commonwealth v. Bray, 96 S. W. Rep., 522. In that case the Court of Appeals of

Kentucky held that on a prosecution under Ky. St. 1903, sec. 1174, defining the offense of false swearing as wilfully and knowingly swearing to that which is false, an indictment charging that defendant swore that he never "made any trade" with a certain person was demurrable as not charging that defendant swore falsely to any fact as distinguished from a conclusion. In the course of the opinion, among other things, the court say: "Whether the accused and Morris had made a 'trade' depended upon whether they had had such negotiations as resulted in a legal contract between them. The result of such negotiations is a question of law. Whether that result is a binding legal contract is therefore a matter of opinion concerning the legal effect of what had transpired. False swearing, as a crime, is a name given by the statute to the act of wilfully and knowingly deposing falsely in a sworn statement before some officer authorized to administer an oath, concerning some fact. Our statute reads (section 1174, Ky. St., 1903): 'Shall wilfully and knowingly swear, depose or give in evidence that which is false.' It is true that opinions are sometimes evidence, so are belief and knowledge—all mental acts. And a witness may swear falsely or commit perjury with reference thereto, in stating on oath that such and such was his opinion concerning a matter about which his opinion became a fact, and was receivable as such as a matter of evidence, when in truth such was not his opinion, and he wilfully, knowingly, and corruptly falsely stated that as his opinion which was not his opinion. Commonwealth v. Edison, 10 Ky. Law Rep., 340, 9 S. W. Rep., 161; Commonwealth v. Thompson, 3 Dana, 301. But where the statement which is the basis of the accusation, is a matter of construction, or a deduction from given facts, that it is erroneous, or is not a correct construction, or is not a logical deduction from all the facts, can not constitute it false swearing. The aim of the statute was not to repress freedom of thought, or to in anywise control the exercise of the judgment. But it was to prevent the giving in evidence or sworn statements, a verity of facts which did not exist, upon which judgment and mental speculation were to be indulged. The accusation in this indictment does not charge that appellee swore falsely as to any fact. The demurrer was therefore properly sustained." Such also is the holding of the Supreme Court of the State of Indiana in the early case of The State v. Woolverton, 8 Blackf., 452, where it was held that an indictment for perjury can nct be maintained where the supposed perjury depends upon the construction of a deed. The opinion in that case is as follows: "The indictment charges that a suit was pending before two justices of the peace wherein Stephen S. Collett was plaintiff and Abel Woolverton was defendant, in which suit said Woolverton, who is the defendant to the indictment, filed the following plea: 'And for a further and second plea the said defendant says that the title of lands is in controversy in this cause;

that a deed of defeasance was made to this defendant by the said plaintiff, Collett; and that by the outstanding title in this cause, he will be enabled to show that said Collett has no right to the possession of the lands set forth in said Collett's complaint; and that the title to lands is in issue in this cause; and this he is ready to verify. Abel Woolverton.' This plea is charged to have been sworn to before competent authority. The assignment of perjury upon it is as follows: 'Whereas, in truth and in fact at the time the said Abel Woolverton took his oath and made his affidavit as aforesaid, the title of lands was not in issue in the said cause, nor was the title of lands in controversy in the said cause at the time of making the affidavit and taking the said oath by the said Abel Woolverton,' etc. It will be observed that the existence of the deed of defeasance is not denied, and it is very clear to us that the assertions in the plea upon which the jury assigned, 'that the title of lands is in controversy' and 'that the title to lands is in issue in this cause,' are but mere opinions of Woolverton as to the legal effect of said deed of defeasance, and being so, they will not support an indictment for perjury. The case of Rex v. Crespigny, 1 Esp. R., 280, is directly in point. That was an indictment for perjury, founded upon an affidavit of Crespigny, that he had not authorized one Dickinson to use his name in suing one Utterson, upon a claim which, among many others, he, Crespigny, had transferred by a certain deed of assignment to said Dickinson. Whether he had authorized such use of his name depended upon the construction given to that deed of assignment, and Lord Kenyon held that an indictment for perjury depended upon the construction of a deed, and directed the jury to acquit the defendant.

"In this case, the whole of the affidavit being set forth in the indictment, the question on the construction of the oath is presented upon the motion to quash." It is a fact that all these decisions as well as the declarations or testimony cited are based upon the decision of Rex v. Crespigny, in the Court of Kings Bench, Common Pleas of England, delivered in 1799, 1 Esp. R., 279. As this case is not readily accessible to the profession and as it is the leading case on this question, for their benefit we copy it entire. It is as follows: "This was an indictment against the defendant for perjury. Plea of not guilty. The case stated on the part of the prosecutor was, that in the year 1783, the defendant being procurator-general of the Court of Admiralty, resigned that office to a person of the name of Heseltine, reserving to himself the emoluments of all such suits as had been commenced during his time, and which were then depending. Soon after this transaction, wishing to retire from all concern with the business, he treated with the prosecutor, Mr. Dickinson; and by deed between him and Dickinson he assigned over all his right before reserved in his agreement with Heseltine, giving to Dickinson, by the same deed, a power

to prosecute all actions then depending in his name; but to receive the profits on his own account.

"One Utterson having become indebted to Dickinson, for business done in the Court of Admiralty, was sued by him in the Court of Common Pleas, in Crespigny's name.

"In that suit, on a motion to stay proceedings, Crespigny made an affidavit, wherein he swore that in the year 1783, he had resigned his place to Heseltine; and that from that period, he had not authorized any person to sue in his name; and that the action then depending against Utterson was brought in his name without his authority. Upon this affidavit the perjury was assigned. Lord Kenyon on this statement being made, asked Garrow (who led for the prosecution) if the perjury did not turn on the construction of the deed, as to what passed under it from the defendant to Dickinson?

"Garrow admitted that in a great measure it did.

"His Lordship then said that the indictment could not be maintained; that if the defendant had in any manner acted inconsistently with the obligation entered into by his deed, it was the object of a civil action; but that where the injury arose from a misconception or mistake in the construction of a clause in a deed for such an injury, an indictment for perjury could not be supported. His Lordship therefore directed a verdict of acquittal."

We think that a fair analysis of the indictment in this case brings it well within the rule laid down in the cases cited, and that no conviction could be predicated either on the indictment or on the state of facts contained in the record. Without discussing the other questions contained in the record it is ordered that the judgment of conviction be set aside, reversed and the prosecution ordered dismissed.

*Dismissed.*