**UNITED STATES v. MARGOLIS.**

No. 8259.

Circuit Court of Appeals, Third Circuit.
Argued May 21, 1943.

Decided Nov. 29, 1943.

Frederic M. P. Pearse, of Newark, N. J., for appellant.

Vincent E. Hull, Asst. U. S. Atty., of Newark, N. J., for appellee.

Before BIGGS, MARIS, and WOODBURY, Circuit Judges.

BIGGS, Circuit Judge.

The appellant was indicted, convicted and sentenced on both counts of an indictment charging him with making false oaths in the bankruptcy proceeding of United Machine Liquidating Co., Inc. The indictment refers to no statute, but the charges are based on Section 29, sub. b(2) of the Bankruptcy Act as amended, 11 U.S.C.A. § 52, sub. b(2). The referee to whom the bankruptcy proceeding stood referred was conducting hearings pursuant to Section 21, sub. a, of the Bankruptcy Act, 11 U.S.C.A. § 44, sub. a, in an endeavor to ascertain the nature and extent of the bankrupt's assets and its business. Margolis had had business dealings with the bankrupt and its president, Sands, over a long period of time.

The first count of the indictment charges that Margolis was asked, "Did you have possession in the last few months of any of the books of the United Machine Liquidating Company?" and that he answered, "No."; that he was asked, "What did you do with them?", referring to the Accounts Receivable and Accounts Payable Books of the bankrupt, and that he answered, "I never had them."; and that he was asked also, "How much money did you give United Machine Liquidating Company for its assignment?", referring to an assignment of a conditional bill of sale against the plant

of C. Fiory Piece Dye Works, and that he answered, "$3,000." It is alleged that his answers to these questions were knowingly false.

The second count of the indictment charges that Margolis was asked, "And the machinery that you repossessed from Empress Fabrics Finishing Company belongs to the Hamilton Investment Company?", referring to a King and Gerber calender, and that he answered, "That is right." It is alleged in the count that his answer was knowingly false.

■ Proof of perjury or false swearing presents an exception to the general rule that evidence which is sufficient to convince a jury of a defendant's guilt beyond a reasonable doubt will sustain a conviction. At common law it was necessary to prove the falsity of the defendant's oath by the sworn testimony of at least two witnesses. That rule was modified. Today it is sufficient if the testimony of a witness is adequately corroborated whether by oral or documentary evidence. In United States v. Palese, 3 Cir., 133 F.2d 600, 603, 604, we held that a conviction could be sustained if competent evidence corroborated the falsity of the oath and that particular circumstances which indicated its falsity need not be corroborated. We will apply the test of the Palese case to the proof offered by the United States under the first count.

The first question framed in the first count in the indictment was asked and answered on December 18, 1939. The word "few" used in the clause "in the last few months" of the question, means "not many; of small number". Webster's New International Dictionary. We conclude that the question referred to a time within two or three months of the day of hearing. Sands testified that he delivered all of the books of United Machine Liquidating Company, except two,[1] to Margolis "around October of 1939". Sands stated that he helped Margolis carry all the books of the bankrupt, except the accounts receivable and accounts payable books, into Margolis' apartment and that from time to time he saw them on a buffet in Margolis' dining-room. Sands also testified that Margolis left some of the books at the office door of the trustee's accountant, Rea. Rea stated that after December 18, 1939 he found books of the bankrupt at his door. He testified also that he had received some books from the appellant though he could not fix this date with particularity.

Charles Yedwab, an accountant, testified that Margolis had paid him $10 to release to Margolis the accounts receivable and accounts payable books of the bankrupt, which with the other books of the bankrupt had been given to him by Sands for auditing some time prior to the bankruptcy; that in accordance with Margolis' instructions he left the two books at a cigar store in order that Margolis might pick them up. Sands' testimony was to the same effect. Sands stated also that Margolis told him that he had received these books from the clerk at the cigar store. Neither Sands nor Yedwab could fix exact dates, but it is clear that Margolis received the accounts receivable and accounts payable books of the bankrupt prior to the hearing before the referee on December 18, 1939. A former deputy marshal testified that on March 11, 1942, he went to Margolis' apartment with two agents of the Federal Bureau of Investigation and there found the sales book of the bankrupt. We must conclude that Sands' testimony as to the delivery of the books to Margolis prior to the hearing of December 18, 1939 is fully corroborated by competent evidence.

■ As to the second question which was asked of Margolis on December 27, 1939, it is unnecessary to repeat the corroborating testimony of Yedwab which we have summarized in the preceding paragraph. The appellant raises another point, however. He asserts that he corrected his erroneous statement as to his possession of the accounts receivable and accounts payable books as soon as he was asked by the referee, "Do you mean to tell me that Mr. Yedwab did not give them [the two ledgers] to you?" and that his erroneous statement was innocently made. An examination of the questions and answers preceding and following the critical question and answer could have led the jury to the conclusion that Margolis would not have corrected his statement if the referee had not shown that he had knowledge of Yedwab's dealings with Margolis. If Margolis' original answer was knowingly false, the crime charged had been completed and is not expunged by a recanting. Cf. United States v. Norris, 300 U.S. 564, 573, 57 S.Ct. 535, 81 L.Ed. 808.

---

[1] These were the accounts receivable and accounts payable books of the bankrupt, loose leaf ledgers, exhibits G-15 and G-16.

■ As to the third question, the government contends that Margolis also swore falsely when he answered that he had given $3,000 to the bankrupt as the consideration for an assignment of certain contracts by the bankrupt to Hamilton Investment Company. This company was owned and operated by Margolis. Sands' testimony as to consideration actually given for the assignment by Margolis or Hamilton is corroborated in essential details. $1,950 of the sum of $3,000 was represented by a debt due from the bankrupt to North Jersey Properties, Inc., which Margolis had assumed. By the testimony of a disinterested witness, the attorney representing North Jersey Properties, Inc., it was shown that Margolis paid $600 against the principal of the debt and settled the balance of the claim for $675. At the very time Margolis was testifying before the referee in respect to this transaction, the settlement of the balance of the obligation had been agreed to by Margolis and he had sent post-dated checks in payment. This was corroborated by a letter sent by Margolis himself to the attorney for North Jersey Properties, Inc. The amount of consideration for the assignment was reduced by this settlement by the sum of $675 as Margolis knew. $500 of the $3,000 represented an obligation which Fiory & Co. owed the bankrupt on notes which had been discounted by Hamilton for United. Margolis sued the bankrupt and Fiory & Co., and got judgment against the latter but did not succeed in serving United with process. At the hearing before the referee Margolis stated categorically that he had procured a judgment against United for $500 which he had satisfied of record. This was not true. The clerk of the court in which the suits were brought testified that no judgment had been procured against United by Margolis. The appellant also included in the $3,000 the amount of a hospital bill owed by Sands which Margolis knew to be the personal obligation of Sands. This was corroborated by Margolis' own testimony. Such evidence is acceptable as corroboration. Cf. United States v. Buckner, 2 Cir., 118 F.2d 468.

■ The questions and answers framed in the first count were pertinent to the issues presented in the proceeding before the referee. The appellant's motion for a directed verdict properly was denied as to the first count.

■ The appellant contends that because Sands was an admitted perjurer his testimony should not have been considered. Even a convicted perjurer, however, may testify competently. The jury must determine his credibility.[2] The court must charge that the testimony of such a witness must be scrutinized with care. The learned District Judge's charge was adequate.

The question and answer on which the second count is based relate to the King-Gerber calender transactions. The record in respect to these is so involved that it is difficult to discover exactly what was done by Margolis, by Sands and by their respective companies. We think that the following is a fair statement of what happened.

The calender and an embossing machine were sold by United under a conditional sale contract to Empress Fabrics Finishing Co., Inc. of Chester, Pennsylvania, and notes were given by Empress to United for the balance of the purchase price. The conditional sale contract was assigned by United to Hamilton. The Empress notes were discounted by Hamilton at United's instance. Other notes (those of Rex and Locatelli) had also been discounted for United by Hamilton about this time.

Empress was not able to fulfill its obligations on the notes, though it made some payments from time to time. Prior to April 14, 1939, Empress' landlord at Chester, Aberfoyle Manufacturing Company, levied a distress for rent on the chattels of Empress, including the calender and the embossing machine and sold them at a constable's sale. The sale was attended by Sands, by Margolis and by counsel representing various interests. The landlord bought all the chattels, thereafter transferring them to a new company which wished to keep the calender but did not want the embossing machine. Counsel for United and Hamilton asserted the claims of those companies to both machines and, after negotiations and the exchange of

2 See Wharton's Criminal Evidence Vol. III Sec. 1424 p. 2332; Commonwealth v. Mazarella, 279 Pa. 465, 124 A. 163. In the case of Hammer v. United States, 271 U.S. 620, 46 S.Ct. 603, 70 L.Ed. 1118, upon which appellant relies, there was no evidence to corroborate the testimony of the witness who had previously committed perjury.

documents respecting title, the calender was released to United. Employees of that company removed it to United's place of business at Hawthorne, New Jersey.

After this had taken place and on May 25, 1939 a memorandum,[3] which was in effect an account stated, was drawn up in accordance with Margolis' directions and signed by him. The statement took into account the status of the Rex, Locatelli and Empress notes and the obligations of United to Hamilton as well as those of Hamilton to United. The statement showed a credit balance in favor of Sands ("due Sands") of $506. A receipt[4] was thereupon given by Hamilton to Sands, signed by Margolis, which stated that there had been received from Sands " * * * payment in full for Empress Fabrics Finishing Co., Inc.". The following day, May 26, 1939, Margolis wrote a letter to Rex stating that Hamilton had purchased from United Rex's notes all dated May 4, 1939 and "aggregating the sum of $2,950.00." The letter[5] states that the first note would be due and payable at the Hamilton Trust Company on July 4, 1939.

The trustee took the position that Hamilton and Margolis had given up all interest in the Empress notes and hence in the King-Gerber calender. Sands testified to this effect and his testimony was fully corroborated by the documents referred to. An examination of the account stated will disclose that the first item shown upon it is the sum of $2,950 described as the "Total Am't Rex notes", referred to in Hamilton's letter of May 26th, and that the balance due Sands of $506 is arrived at by adding and deducting items from the sum of $2,950. It is clear that what Margolis did was buy the Rex notes from United or Sands, inform Rex to this effect and treat the Empress notes as paid in full. This plainly was a completed transaction.

Margolis contended to the contrary before the referee. He was asked, "Are you positive that this transaction never went through?" He answered, "Positive about that." There followed the question whether the calender, repossessed from Empress, belonged to Hamilton and Margolis' answer, "That is right." Margolis now contends that his answer to the question of the ownership of the calender was a mere opinion, a layman's conclusion of law and that he should not be held to answer a charge of false swearing because he expressed a conclusion. In support of his position he cites such cases as Farley v. Colver, 113 Md. 379, 77 A. 589; Schoenfeld v. State, 56 Tex.Cr.R. 103, 119 S.W. 101, 22 L.R.A.,N.S., 1216, 133 Am.St.Rep. 156, and Commonwealth v. Bray, 123 Ky. 336, 96 S.W. 522.[6]

It is axiomatic that the expression of an opinion which is irrelevant cannot be the subject of perjury. Wharton's Criminal Law, Ruppenthal's 12th Ed., Vol. 2, p. 1812, § 1549. Margolis' opinion as to Hamilton's ownership of the calender was not legally relevant. The referee, as a court of bankruptcy, was making inquiry as to the ownership of the calender by ascertaining facts relating to ownership. The referee properly was concerned only with the pertinent facts from which ownership could be found so that he might make the correct legal conclusion. Typical of such facts were those relating to the transaction of May 25, 1939, but the question and answer framed in the count are not legally pertinent to that inquiry under the circumstances of the case at bar.[7] It follows that the court below should have granted the defendant's motion for a directed verdict as to the second count.

The judgment of sentence on the first count is affirmed. The judgment of sentence on the second count is reversed.

---

[3] Exhibit G-21.

[4] Exhibit G-22.

[5] Exhibit G-35.

[6] It should be noted that Margolis' secretary testified at his trial that acting for Hamilton she gave advances to Sands after May 25, 1939 and wants back the Empress notes. She stated that she forgot to take back the receipt which Margolis had given Sands.

[7] In reaching this conclusion we wish it to be understood that we do not take the position that under certain circumstances (not here presented) an opinion upon a question of law expressed either by a layman or an attorney may not be the basis of an indictment for perjury or false swearing. See Rex v. Pedley, 1 Leach, C.L. (Eng.) 325; Com. v. Edison, 9 S.W. 161, 10 Ky.Law Rep. 340. See also as to when opinion becomes primary proof, Wharton's Criminal Evidence, §§ 225, 455, 458 and 460, as well as the situation presented when the opinion expressed is a summary of facts claimed to be known by the defendant. See State v. Cruikshank, 6 Blackf., Ind., 62, and Wharton's Criminal Law, supra. Compare the situation presented by the circumstances disclosed in Williamson v. United States, 207 U.S. 425, 452, 453, 28 S.Ct. 163, 52 L.Ed. 278, 292, 293.