## NOELL et al. v. UNITED STATES.
### No. 11989.

United States Court of Appeals
Ninth Circuit.

June 29, 1950.

Rehearing Denied Aug. 10, 1950.

A. Brigham Rose, Los Angeles, Cal., for appellant.

Ernest A. Tolin, U. S. Atty., Norman W. Neukom and William L. Baugh, Asst. U. S. Attys., all of Los Angeles, Cal., for appellee.

Before BONE and POPE, Circuit Judges, and BLACK, District Judge.

BLACK, District Judge.

The appellants, husband and wife, were convicted after a lengthy jury trial of knowingly and fraudulently concealing assets in bankruptcy and making false oaths in connection therewith. They were tried under a three-count indictment charging violations of 11 U.S.C.A. § 52, sub. b(1, 2). Such sections of the Code have since been replaced by new Title 18 U.S.C.A. § 152, Crimes and Criminal Procedure. Their motion for new trial was denied and judgment and sentences were entered upon the verdicts of the jury.

In the first count defendants were charged jointly with knowingly and fraudulently concealing $25,000 and an automobile from Crules R. Cheek, first as receiver and then shortly thereafter as trustee. In count two Amelia E. Noell was charged with having made a false oath in her bankruptcy schedules concerning such automobile. Count three charged James A. Noell with having testified falsely before the Referee as to such automobile. Both defendants were convicted as to count one, she as to count two, he as to count three.

They have appealed jointly to this court.

It seems that the contentions of appellants are chiefly these: First, there was insufficient evidence to support the verdict as to any of the three counts. Second, and apparently the main contention of appellants, that in any event there was insufficient evidence to support that portion of count one which charged concealment of $25,000 in cash. Third, that the exhibits were withheld from the jury. And fourth that charts setting forth a summary by an examining accountant of appellants' books and papers of account and accounting records should not have been admitted in evidence.

As to such contention of insufficiency of the evidence to support the three counts, or any of them, suffice it to say that this court has examined the record and finds that there unquestionably was sufficient evidence presented to authorize the jury to pass upon the guilt or innocence of each defendant as to each count and to sustain the verdict as to each. And in view of all the circumstances disclosed by the evidence we have no good reason to and do not doubt the correctness of the jury's conclusions.

From the verdicts it is clear that the jury accepted as true the testimony of two witnesses whom appellants insist were unworthy of belief. But the jury had a right to believe them. We must and do test the sufficiency of the proof upon the basis of what the jury had the right to believe, and not upon what the defendants claim the jury should have believed. See Todorow v. United States, 8 Cir., 173 F.2d 439.

The second contention, in substance, is that even if the evidence is held to support the charge as to the automobile that in any event there was no substantial evidence to sustain that portion of count one that alleged that cash was concealed. Such apparently is based upon the argument that unexplained cash withdrawals by appellants of over $25,000 from their banking accounts in installments beginning less than two months and continuing to two days before they filed their voluntary petitions in bankruptcy, did not constitute any evidence or justify any presumption that they had any of such in their possession when the receiver was appointed, which was within a day of the filing of their petitions, or when the trustee was appointed, which was about ten days later.

Appellants rely on this point chiefly upon Maggio v. Zeitz, 333 U.S. 56, 68 S.Ct. 401, 92 L.Ed. 476; Hersh v. United States, 9 Cir., 68 F.2d 799, 804; Reiner v. United States, 9 Cir., 92 F.2d 823, 824–825. They have completely misinterpreted the holdings and effect of such decisions and have wholly disregarded the short lapse of time involved here as contrasted with the substantial periods in such relied-upon decisions.

In Maggio v. Zeitz the Supreme Court points out that the punishment for contempt for failure to comply with a turnover order cannot be substituted for criminal prosecution for previous concealment of assets from the trustee. Its holding that Maggio could not be held for contempt was substantially based upon the determination of the Court of Appeals, In re Luma Camara Service, Inc., 2 Cir., 157 F.2d 951, 955, that "we know that Maggio cannot comply with the order, * * * which first direct Maggio 'to do an impossibility, and then punish him for refusal to perform it.'"

In that Maggio contempt proceeding it appeared that the unexplained shortage of merchandise had occurred in November and December, 1941 and that on April 23, 1942 an adjudication of bankruptcy occurred, which was the approximate time of any fraudulent concealment of same from the trustee. But Maggio was not proceeded against criminally for concealing such from the trustee at the time of his appointment or at all. Instead, in April, 1943 or almost eighteen months after the alleged disappearance of the goods, turnover proceedings were instituted. In 1945, or almost four years after the shortage, Maggio was held by the District Court to be in contempt for having failed to comply with such turnover proceedings in 1943. The Supreme Court said:

"Courts of bankruptcy have no authority to compensate for any neglect or lack of zeal in applying these prescribed criminal sanctions * * *.

"Unfortunately, criminal prosecutions do not recover concealed treasure. * * * "the turnover order has been sustained as an appropriate and necessary step in enforcing the Bankruptcy Act. * * *

"But this procedure is one primarily to get at property rather than to get at a debtor. * * *

"it is appropriate only when the evidence satisfactorily establishes the existence of the property or its proceeds, and possession thereof by the defendant at the time of the proceeding." [333 U.S. 56, 68 S.Ct. 404.]

The Supreme Court made it clear that by the time of the turnover order in 1943 or the contempt order in 1945 that the evidence did not satisfactorily establish possession at such late dates by the defendant even though he might have had same in 1941. On this point the Supreme Court said: "Of course, the fact that a man at one time had a given item of property is a circumstance to be weighed in determining whether he may properly be found to have it at a later date. But the inference

from yesterday's possession is one thing, that permissible from possession twenty months ago quite another. * * * Such an inference is one thing when applied to a thrifty person who withdraws his savings account after being involved in an accident, * * * it is very different when applied to a stock of wares being sold by a fast-living adventurer * * *."

There is nothing in that decision that even suggests that the Supreme Court would not hold one criminally liable if he had been indicted for and convicted of having concealed the merchandise from a receiver if the time lag as to concealment had been such as is here presented.

The decision of this Court of Appeals in Hersh v. United States, 9 Cir., 68 F.2d 799, 803, is clearly distinguishable. In the Hersh case the decision hinged upon the unusual and complicated factual situation which the court discussed in considerable detail. The bankrupt in that case in July filed a voluntary petition pursuant to a prior understanding with the creditors' committee and the trustee was not appointed until October. The principal checking accounts involved were shown to have existed in July. However, the court held that under the particular circumstances and especially by reason of the understanding with the creditors' committee as to a proposed settlement that there was no concealment and that defendant "was entitled to conduct his business and to utilize his funds therein in paying the expenses of the conduct of such business until such time as a custodian, receiver, or trustee was appointed to take possession of the property * * *."

In such connection the court did say: "The burden of proof was upon the government to show the concealment of the funds alleged in the indictment. In view of the fact that the concealment relied upon consisted in the transfer of monies to Klein and Auerbach several months before the trustee qualified, it was essential to show that this concealment continued down to the time the trustee was appointed and thereafter, with intent to deprive the trustee and the creditors of the aforementioned sum. As we have pointed out, the original concealment involved in the transfer of the money to Klein and Auerbach was accompanied by a disclosure to most if not all the creditors. Our attention is not called to any creditor who was not present or represented at the meetings where the setting up of these special deposits was arranged for. Under such circumstances there was no such concealment from the trustee as constitutes a crime under the Bankruptcy Act (11 U.S.C.A.) at the time of the transfer." 68 F.2d page 804.

Even then in reversing the conviction because of numerous errors in instructions the court in the Hersh case authorized a new trial to determine whether there was any subsequent concealment, having earlier in that opinion said: "We are not deciding that the jury should have been instructed to acquit the defendants." 68 F.2d page 805.

In Reiner v. United States, 9 Cir., 92 F. 2d 823, 824 the conviction was reversed primarily because as the court held "The variance between charge and evidence is too great."

The Reiner opinion did point out that even if the variance had not been sufficient to justify a reversal the evidence only established possession of $725.00 on April 24 which was not accounted for. In such connection that court said, "There is no evidence that this was not expended in necessary living expenses between April 24th and July 7th. The appellee failed to maintain its burden of proof that there was any of it left to conceal on July 7th." 68 F.2d page 825.

We agree with the holding of Hersh v. United States, supra, and Reiner v. United States, supra, that "The burden of proof was upon the government to show the concealment of the funds alleged in the indictment. * * * it was essential to show that this concealment continued down to the time the trustee was appointed and thereafter, with intent to deprive the trustee and the creditors of the aforementioned sum." (Hersh v. United States, supra)

Under the evidence in this instant Noell case the jury was justified in finding that the appellants never expended more than

$400 per month for household expenses. Thus, since the evidence unquestionably established the withdrawal of over $25,000 of the unaccounted for cash in installments within a period of fifty-six or fifty-seven days prior to the appointment of the receiver, the last withdrawal being only two or three days before such appointment, the jury was justified in concluding beyond all reasonable doubt that the appellants Noells had and were concealing such money or a substantial portion thereof at the time the receiver was appointed as well as when the receiver shortly thereafter became trustee. The reasoning of Maggio v. Zeitz, supra, Hersh v. United States, supra, and Reiner v. United States, supra, not only do not disagree with the jury's conclusion in this case but on the contrary in principle certainly, at least impliedly, and probably directly, support the verdicts.

■ Apropos of the decisive character of the brevity of the time lapse here involved are these words from 31 C.J.S., Evidence, § 124 at pages 736–737:

"Proof of the existence at a particular time of a fact of a continuous nature gives rise to an inference, within logical limits, that it exists at a subsequent time.

"The limits of time within which the inference of continuance possesses sufficient probative force to be relevant vary with each case. Always strongest in the beginning the inference steadily diminishes in force with lapse of time * * *. In other words, it will be inferred that a given fact or set of facts, the existence of which at a particular time is once established in evidence, continues to exist so long as such facts usually do exist."

■ In view of the brief lapse of time between withdrawals and duty to account to receiver and trustee we hold that the jury could logically return the verdict it did as to fraudulent concealment of money as well as of automobile as charged in count one. See Cohen v. United States, 4 Cir., 67 F.2d 449; Arine v. United States, 9 Cir., 10 F.2d 778; United States v. Rosenberg, 2 Cir., 145 F.2d 653; and Brune v. Fraidin, 4 Cir., 149 F.2d 325, at pages 327 and 328.

As to the third contention of appellants that the exhibits were withheld from the jury appellee's brief declares "No objection was made in the trial court that the exhibits were kept from the jury for the very good reason that they were not withheld."

An examination of the record definitely supports the government's position.

■ The record affirmatively shows that the trial judge at the close of his instructions advised the jury of the manner of availability to them of all of the exhibits. Counsel in no wise objected or excepted. Then in the absence of the jury arrangements for making the great amount of exhibits available for the jury in accordance with the advice shortly before given were completed with counsel. There was not the slightest objection or exception by either counsel. In fact appellants' counsel then made comment which clearly indicated approval of the procedure and in addition participated in the arrangement for making the exhibits so available.

The appellants make considerable claim of error based on the admission of the charts in evidence. Same, according to the accounting expert who made them, summarized the great mass of accounting memoranda and accounting records kept by appellants and admitted as exhibits Such claim of error is based on the interesting contention that the financial records and memoranda of appellants themselves were incomplete. On this point their opening brief at page 53 says: "Appellants do not contend that it is improper to use the evidence of an expert to summarize *all* the items of such account and state the results of the jury, nor to thereafter illustrate the same by the use of charts."

The main objection was that the charts did not set forth and credit appellants with the payment in the month preceding their filing of their petitions in bankruptcy of $15,000 which appellants in their amended schedule B-3 for the first time claimed was made to an alleged William Scheules of Roseburg, Oregon. Appellants had no record of such. They claimed it was paid in cash. They admit they received no receipt for and had no written evidence of

any such payment. In addition, their original petitions and schedules in bankruptcy in no wise indicated it.

The expert accountant was authorized to present the summary of the records themselves to the jury. Arine v. United States, 9 Cir., 10 F.2d 778.

■ And unquestionably the charts were admissible. See United States v. Weinbren, 2 Cir., 121 F.2d 826, 829. Their weight was for the jury. It was for the jury to decide how much or little credence should be given to the charts and likewise how much or little credence should be given to the amended schedule and its claim that $15,000 in cash had been paid to William Scheules.

There was no William Scheules at the trial although there was evidence by the government that efforts to locate any one by that name were fruitless.

■ We have not overlooked appellants' contention, urged for the first time in the brief, that there was error at the time of imposition of sentence by virtue of the trial judge's asking what the government's recommendation was, as to the recommendation made and as to the source of such. It should be noted that there is no claim by appellants that there was any error as to the amount of the sentences given. In effect appellants merely argue that after the judge had heard appellants and their counsel when considering imposition of sentences it was improper for him to ask for, or for any representatives of the government to make, any recommendation. Appellants, of course, are mistaken. In addition, there was no objection or exception at the time nor any indication of the slightest concern about such request, the recommendation or its source until long after the appeal was taken. Appellants are not now asking for any resentencing. They only seek acquittal or in the alternative a new trial.

The recommendations made were more lenient than the sentences pronounced. And certainly the sentences could have been substantially greater.

■ And likewise we have not overlooked appellants' insistence that they were prejudiced by the injection into the trial of the suggestion that they were engaged in black market activities. But it was the appellants and their counsel who injected it. The appellant husband voluntarily stated, "It was a black market deal" and within a few minutes appellants' counsel repeated, "It was a black market deal."

At that time appellants apparently felt that the suggestion to the jury of black market activities would be to their advantage.

Appellants' brief contains contentions of other alleged errors. While not deeming it necessary to discuss same here this is to state that we have considered all of them and find no merit in them.

In passing we may mention that appellee submits that appellants' brief does not comply with our Rule 20. We are doubtful that there has been the required compliance.

The trial of this case consumed many days. The jury was carefully instructed by the trial court. There were no objections or exceptions of any kind concerning the instructions and appellants do not here make any complaint as to such.

Appellants had a fair trial. The verdicts are supported by the evidence. We do not find that any prejudicial error was committed against appellants.

The judgments appealed from should be and are affirmed.