John A. METHEANY, Appellant,

v.

UNITED STATES of America, Appellee.

No. 19414.

United States Court of Appeals Ninth Circuit.

Aug. 5, 1966.

---

Sheldon Green, Phoenix, Ariz., for appellant.

William P. Copple, U. S. Atty., Richard C. Gormley, Asst. U. S. Atty., Phoenix, Ariz., for appellee.

Before MERRILL and KOELSCH, Circuit Judges, and JAMESON, District Judge.

KOELSCH, Circuit Judge.

Appellant was jointly tried with one G. Ronald Dodson (Dotson) on an indictment that contained six counts, each charging a separate substantive offense under 18 U.S.C.A. § 152.[1] In five of the counts appellant was named as the sole defendant; in the sixth Dotson alone was named. Thus appellant, by Count One, was charged with the fraudulent concealment from the trustee in bankruptcy of

---

1. 18 U.S.C.A. § 152.

"Whoever knowingly and fraudulently conceals from the receiver, custodian, trustee, marshal, or other officer of the court charged with the control or custody of property, or from creditors in any bankruptcy proceeding, any property belonging to the estate of a bankrupt; or

Whoever knowingly and fraudulently makes a false oath or account in or in relation to any bankruptcy proceeding;
* * *

\*　\*　\*　\*　\*　\*　\*

Shall be fined not more than $5,000 or imprisoned not more than five years, or both."

Quality Furniture, Inc., of the sum of $1285.80, belonging to the bankrupt's estate, and by Counts Three through Six with making false oaths concerning matters relating to the bankruptcy proceeding; Dotson was similarly charged by Count Two with concealing $2840.31. The jury found appellant guilty upon all of the five counts against him and he has appealed from the ensuing judgment of conviction and sentences.

Appellant contends that the court erred in overruling his motion for a judgment of acquittal made at the close of the government's evidence and renewed at the conclusion of all the evidence in that there was no substantial evidence to support a verdict against him; he also complains of the ruling of the district court denying his motions to suppress certain evidence and refusing to grant a severance for misjoinder of defendants.

 We are of the opinion that the evidence in this record, viewed in a light most favorable to the government, sustains the action of the court below in overruling appellant's motion for acquittal and in submitting the case to the jury and that such evidence supports the verdict as to each of the several offenses. With reference to the concealing charge, the proof showed that appellant was the lawyer for Quality until the filing of its petition in bankruptcy; that shortly before that time he induced one Sandoval, its president and a principal shareholder, to loan and entrust to him $5800 on representation that the moneys were needed to pay Capitol's creditors and would be so applied; that although appellant disbursed a part of the loan as promised, he wilfully retained and withheld from

the trustee $1285.80 of the sum. The government, of course, bore the burden of proving that on the date the trustee for Quality qualified, pursuant to appointment, appellant had in possession some moneys belonging to the bankrupt. Hersh v. United States, 68 F.2d 799 (9th Cir. 1934); Reiner v. United States, 92 F.2d 823 (9th Cir. 1937); Noell v. United States, 183 F.2d 334 (9th Cir. 1950). And we are not unmindful that it adduced no direct evidence to establish that fact. But such proof is not indispensable. Mr. Wigmore explained that "When the existence of an object, condition, quality, or tendency at a given time is in issue, the *prior existence* of it is in human experience some indication of its probable persistence or continuance *at a later period.*" WIGMORE on Evidence, 3d ed. Vol. II, § 437, p. 413.[2] And this court had occasion to consider and approve this principle in both the *Noell* and *Reiner* cases above cited.[2] Here there was considerable circumstantial evidence upon which to infer possession. For example, the two "creditors" to whom appellant has claimed he paid the $1285.80 were fictitious and the "payments" by his own statement were close in point of time to the filing of the bankruptcy for which he had arranged.

The false oaths were in the form of answers given by appellant during his interrogation at a "Section 21" hearing (11 U.S.C.A. § 44), called by the referee upon application of the trustee to secure information concerning "acts, conduct, or property of a bankrupt."

"The object of the examination of the bankrupt and other witnesses to show the condition of the estate is to

---

2. Since inferences rest upon probabilities, all relevant factors must be considered in determining whether the fact finder may fairly draw an inference; in this vein Wigmore says:

"The degree of probability of this continuance depends upon the chances of intervening circumstances having occurred to bring the existence to an end. The possibility of such circumstances will depend almost entirely on the nature of the specific thing whose existence is in issue

and the particular circumstances affecting it in the case in hand. That a soap bubble was in existence half-an-hour ago affords no inference at all that it is in existence now; that Mount Everest was in existence ten years ago is strong evidence that it exists yet * * *. So far, then, as the *interval of time* is concerned, no fixed rule can be laid down; the nature of the thing and the circumstance of the particular case must control." WIGMORE (Id.).

enable the court to discover its extent and whereabouts, and to come into possession of it, that the rights of creditors may be preserved."

Cameron v. United States, 231 U.S. 710, 717, 34 S.Ct. 244, 246, 58 L.Ed. 448 (1914). The answers forming the basis for Counts Three, Four and Five, respectively, concerned the date when appellant ceased to act as Quality's lawyer and his possession of corporate records at the hearing date; the answer in Count Six consisted of his denial of knowledge of the identity of the purchaser of Sandoval's stock in Quality.

As indicated earlier, the proof was sufficient to show falsity and appellant's knowledge of that fact. However, he urges that the answers lacked materiality. The government, pointing out that the statute does not in terms impose such a requirement, counters that materiality is not an essential ingredient of the offense under Section 152. We disagree. And our view is not only squarely supported by the Tenth Circuit in Meer v. United States, 235 F.2d 65 (1956) but also tangentially by our own decision in Newman v. United States, 58 F.2d 751 (9th Cir. 1932) and that of the Third Circuit in United States v. Margolis, 138 F.2d 1002 (1943). The latter two cases, it is true, were decided under an earlier statute which at that time was part of the Bankruptcy Act, but its verbiage was the same as that presently found in Section 152. See also Chereton v. United States, 286 F.2d 409 (6th Cir. 1961).

This court, in Newman v. United States, supra, approved and held applicable the following test of materiality of testimony announced in Wheeler v. People, 63 Colo. 209, 165 P. 257, 258:

"Perjured testimony to be material need not be directly to the main issue; if it has a tendency to prove any material fact in the chain of evidence, that makes it material. * * * The term 'material matter' refers not only to the main fact which is the subject of inquiry, but also to any fact or circumstance which tends to corroborate or strengthen the proof adduced to establish the main fact."

Bearing in mind the object of the examination, we are convinced that the several false answers were highly material. Without exception they were pertinent to the larger question of the extent and nature of the bankrupt's assets. For example, the time of cessation of appellant's professional relationship to Quality was relevant and might tend to shed considerable light upon the ownership of the $5800 which the trustee discovered appellant had received from Sandoval. Appellant was asserting that the moneys were received by him as trustee for Sandoval. If, however, he remained and was at the time Quality's attorney, that would be a significant factor to consider in attempting to resolve the question; the importance of the inquiry regarding the bankrupt's books is self evident and although the materiality of the identity of the purchaser of Sandoval's stock is not as readily apparent, nevertheless it becomes so when viewed in the setting here. Sandoval was president and a controlling shareholder of Quality; conceivably the sale—made on the eve of bankruptcy—might have been to the corporation in exchange for capital assets and hence voidable.

There is no merit in the assignment that the court erred in refusing to suppress and admitting into evidence a number of cancelled checks belonging to appellant.

These checks came into the trustee's possession as the result of a turnover order made by the referee during a Section 21 hearing. As we understand appellant, his contention is that the trustee in invoking the aid of the bankruptcy court to secure the checks acted as the "cat's paw" for the prosecution. He relies upon Abel v. United States, 362 U.S. 217, 80 S.Ct. 683, 4 L.Ed.2d 668 (1960), a case in which the court roundly condemned the abuse of administrative process saying "[t]he deliberate use by the government of an administrative

warrant for the purpose of gathering evidence in a criminal case must meet stern resistance by the courts."

In order for us to hold the trial court's rulings wrong, we would have to conclude that the trustee was not primarily motivated by his lawful duty to investigate the bankrupt's affairs and collect the assets of the estate, but rather by a desire to commit a wrongful act. This record does not provide support for such a finding; it does not manifest an appeal in bad faith to the bankruptcy court or an impermissible degree of cooperation with the prosecution that would taint the evidence and prevent its consideration.[3]

One point remains. Rule 8(b) of the Federal Rules of Criminal Procedure permits the joinder of multiple defendants in the same indictment "if they are alleged to have participated in the same act or transaction or in the same series of acts or transactions constituting an offense or offenses."

■ Here, as appears from the face of the indictment, the appellant and Dotson were not charged with participation in the same acts nor can it be concluded from the fact that separate but similar allegations were made with respect to one type of offense with which each was severally charged that appellant and Dotson were engaged in the "same series of acts."[4]

■ Rule 8(b) was intended as a restatement of existing law. Notes of Advisory Committee on Rules, Note to Subdivision (b) following 18 U.S.C.A. Rule 8; Ingram v. United States, 272 F.2d 567, 570 (4th Cir. 1959). And McElroy v. United States, 164 U.S. 76, 17 S.Ct. 31, 41 L.Ed 355 (1896) settled the law that two or more defendants cannot properly be severally charged in the same indictment with distinct and several offenses not parts of the same transaction or connected together, but independent of each other and not provable by the same evidence; in that case the Supreme Court unequivocally declared: "such joinder cannot be sustained." (p. 81, 17 S.Ct. 31.) Additionally the Court held that any misjoined defendant who suffered a conviction was entitled to a new trial separate from the others for the reason that "[i]t cannot be said in such case that all the defendants may not have been embarrassed and prejudiced in their defence, or that the attention of the jury may not have been distracted to their injury in passing

---

3. The conclusion is indeed warranted that appellant vounteered to turn over his checks and invited the order. The transcript of the hearing shows that when Sandoval, during his examination, stated that he would waive any client's privilege he might have to object to appellant testifying concerning the disposition of the loan, appellant immediately said "To avoid the necessity of another hearing, in view of Mr. Sandoval's waiving his privilege, attorney-client privilege, I have no objection to submitting these [checks] to whatever party the court so orders, if it cares to make an order at this time." Thereupon the court verbally ordered appellant to deliver them to the trustee and he did so several days later.

4. A conspiracy count—not contained in this indictment—would not have served this purpose: "Where multiple defendants are involved, Rule 8(b) requires that *each* count of the indictment arise out of 'the same series of acts or transactions' in

which all of the defendants 'have participated'." Williamson v. United States, 310 F.2d 192, 197, f.n. 16 (9th Cir. 1962).

It is also to be noted that the offense in the four false oath counts against appellant was essentially that of perjury. Because this is strictly a personal offense, ordinarily two or more persons cannot be joined in a single charge of its commission:

"[t]he rule of law is that, when an offense is such that several may join in it, all or any number of those who join in it may be indicted, either jointly or separately. But where the offense is such as not to permit the participation or agency, several offenders cannot be joined,—as for perjury, or for seditious or blasphemous words, or the like; because such offenses are in their nature several." Jaycox v. United States, 107 F. 938, 941 (2d Cir. 1901). See Joyce on Indictments, Sec. 585 (2d Ed. 1924); 42 C.J.S. Indictments and Informations § 159(b), p. 1107.

upon distinct and independent transactions." [5]

■ In sum, as the District of Columbia Circuit recently decided in Ward v. United States, 110 U.S.App.D.C. 136, 289 F.2d 877 (1961), a case similar to the one before us, " 'where multiple defendants are charged with offenses in no way connected, and are tried together, they are prejudiced by that very fact, and the trial judge has no discretion to deny relief' "—in that instance, a new trial.

The verdict and judgment are set aside and the cause is remanded to the district court with directions to grant appellant a new trial.

5. The per se prejudicial effect of misjoinder was recognized by this court in Culjak v. United States, 53 F.2d 554, 82 A.L.R. 480 (9th Cir. 1931). There noting "the established rule" prohibiting a "practice of the joining in one indictment different defendants, some of whom are charged with one crime and some with another" the Court declared valid the argument "that prejudice would result to the accused, if such practice were permitted, and that such prejudice is apparent and must be assumed."