## In re LUMA CAMERA SERVICE, Inc.

### No. 80681.

District Court, S. D. New York.
Dec. 13, 1943.

Glass & Lynch and Benjamin H. Wicksel, all of New York City (Bernard Alpert, of New York City, of counsel), for trustee.

Duberstein & Schwartz, of Brooklyn, N. Y., for respondent.

LEIBELL, District Judge.

The respondent, Joseph F. Maggio, president of the bankrupt, brings up for review the Referee's order of August 9, 1943, which directed the respondent to turn over to the trustee merchandise belonging to the estate of the amount and value of $17,500, or the proceeds of the sale of said merchandise.

The bankrupt corporation was engaged in the business of selling photographic equipment and supplies at 340 West 42nd Street, Borough of Manhattan, City of New York. The respondent was the principal active officer and manager of the bankrupt. He owned the stock and dominated and controlled its affairs. The other officers and directors were his wife and mother-in-law. A general assignment for the benefit of creditors was made on December 30th, 1941. On April 14th, 1942, an involuntary petition in bankruptcy was filed and on April 23rd, 1942, there was an adjudication of bankruptcy. The first meeting of creditors was held on June 1st, 1942. The trustee in examining into the affairs of the bankrupt for the year 1941, discovered a merchandise shortage, and on January 18, 1943, he instituted turnover proceedings against the respondent for merchandise of the value of $34,781. After several hearings during which the bankrupt himself testified, the Referee made the order of August 9, 1943, which is the subject of this review.

The Referee found (finding No. 12) : "12. That under the evidence and the authorities the respondent, Joseph F. Maggio, was and now is in possession or control of merchandise belonging to the bankrupt estate of the amount and value of not less than $17,500, or the proceeds of the sale thereof; that said merchandise consists of photographic equipment and supplies of the class and description commonly purchased and dealt in by the bankrupt in the regular course of its business; that the respondent withheld and/or concealed said merchandise from the Trustee herein, and that the same belonged to the estate of the bankrupt herein."

In tabulated form, the evidence as adduced before the Referee, appears as follows:

| | |
|---|---|
| Bankrupt's mdse. on hand Jan. 1, 1941 (From franchise tax returns and financial statement) | $ 30,889.95 |
| Additional mdse. purchased during 1941 (According to the books and records) | 101,998.62 |
| Total mdse. to be accounted for | $132,888.57 |
| Less Net sales during 1941 amounted to $111,636.95 according to the books and records. If the sales were made at cost, then $111,636.95 of merchandise is thus accounted for. Some sales were made below cost on which the Referee allowed a loss of $2,099.34. The aggregate of these two figures is | $113,736.29 |
| Net balance of mdse. to be accounted for | $ 19,152.28 |
| Final Inventory at cost (from inventory sheets signed by Maggio) | 1,652.28 |
| Merchandise Shortage (not accounted for) | $ 17,500.00 |

The Referee refused to find that the bankrupt operated at any specific rate of profit. In this he favored the respondent. The evidence would have supported a find-

ing that bankrupt's average gross profit was about 11%. Respondent testified that about $30,000 of his sales were at cost. In making his calculations the Referee considered that none of the sales in the year 1941 totalling $111,636.95 were made at a profit; in fact, he held that some sales were made at a loss of $2,009.34, although the bankrupt testified that the merchandise sold at a loss was between $1,000 and $2,000. By allowing the bankrupt more than a total loss on the merchandise the bankrupt had testified was sold at a loss, the Referee arrived at a round figure of $17,500, as the value of the merchandise for which the respondent had failed to account. The Referee was more than generous.

In his petition for review, the respondent contends that the Referee's order is erroneous as contrary to the law and the weight of the evidence in that the trustee failed to prove that the respondent had in his possession merchandise of the bankrupt at the time of the filing of the petition in bankruptcy and at the time of the Referee's order of August 9, 1943, and "in not giving due accord to the evidence with respect to sales at a loss and in arbitrarily arriving at an amount to be turned over by the respondent to the trustee".

The Referee in his opinion said that "on the evidence it would be impossible to find against the respondent on the basis of any specific rate of gross profit on sales", and therefore concluded that the maximum amount (of merchandise) that can be claimed to have been unaccounted for was the sum of $19,599.34. The Referee also stated:

"It is true that it does appear that many sales are admitted to have been made by the bankrupt at a profit, but the respondent also claims that a number of sales in the latter part of the year were made at a loss.

"The undersigned Referee is of the opinion that in view of the fact that the bankrupt has not given clear and explicit testimony with regard to the specific sales which were made at a loss, that under the law little heed can be given thereto. However, taking into consideration the fact that sales were made at a profit and making due and liberal allowance for any sales made at a loss, the undersigned Referee is of the opinion that there has been failure to account for a minimum of $17,500 worth of merchandise."

The bankrupt's books of account were not written up for November and December,

1941. The sales were listed in the general ledger up to October 31, 1941. The trustee's accountant had to get the subsequent sales (November and December) from the cash book and bills. For the last two months the books were in bad shape. For November and December the figures as reconstructed by the accountant were—purchases, $1,259.91; sales, $2,928.36; payments to creditors, $4,700.

A comparison of the debtor's business for prior years with his business in 1941 up to October 31st shows that he did the same average business of purchases and sales in 1941 as in prior years. His franchise tax report and his financial statement to the Sterling Bank showed a net worth of $22,902.75 at the end of December, 1940. All of that was in inventory, which was $30,889 against an inventory of $20,250.24 at the close of 1939. He had bills payable of $18,284.45 at the end of 1940 against $14,397.33 at the end of 1939. His accounts receivable at the end of 1940 were $8,263.66 compared with $10,344.74 at the end of 1939. His larger inventory did not prove to be a handicap because the respondent himself testified that it was hard to get merchandise in 1941, especially after July, and that it cost more because of an increase in taxes. Respondent also testified that his creditors were pressing him in November and December and that he sold merchandise below cost. But his total sales in November and December, 1941, were only $2,928.36. His sales for the first ten months were about $109,000. It is clear therefore that the merchandise shortage occurred in those two months November and December, 1941, for which the bankrupt's books were in such poor shape. Giving respondent the benefit of every doubt, the irreducible minimum of the cost value of the merchandise unaccounted for was the $17,500 for which the Referee held him accountable.

Petitioner's new counsel in his brief asks that the record be returned to the Referee and that he be directed to reopen the proceeding so that respondent may offer evidence on new matter allegedly not previously testified to, such as—

1. The return of merchandise for which no credit was received in the turnover proceedings;

2. Losses sustained on broken, spoiled, or exchanged merchandise, for which no credit was received in the turnover proceedings.

3. Loans to the bankrupt by the respondent and his family during the year 1941.

4. The financial means, status and condition of the respondent during 1941, 1942 and 1943, and the ability of respondent to comply with any turnover order.

The Referee took testimony from several witnesses including the respondent. The trustee's accountant testified that his compilations were arrived at from the bankrupt's books, bills and cancelled checks, and from a check-up with the bankrupt's principal sources of supply. His figures were subject to careful cross-examination. He substantiated the shortage, and in respect to petitioner's claim No. 1 (supra) testified that all returns were accounted for. As to item 2, if there were any such losses of any substantial amount, that could have been shown by respondent and by the bankrupt's former accountant who was called as a witness in respondent's behalf. If the inventory at the end of 1941 is any indication of the quality and completeness of the articles of merchandise in the bankrupt's store, then there could be very little involved in item 2—an insignificant amount compared with the total merchandise shortage.

Item 3 would have no effect on the figures relating to the merchandise shortage. Besides, the bankrupt told of loans to the business, about $2,000 made by his wife in November 1941 and about $1,500 by himself in September. If some one was making off with more than $17,500 of the bankrupt's merchandise (and in my opinion it was much more than what the Referee found) instead of selling the merchandise and using the proceeds to pay expenses, of course some money had to be put into the business to satisfy the demands of the most pressing creditors. Item 4 the bankrupt testified to fully at the hearings before the Referee.

The respondent denied that he had taken any merchandise from the store or that he had in his possession the merchandise concerned. There was no real attempt on his part to explain the serious merchandise shortage found here. He made a lot of general statements that explained nothing. Very significantly, during the last two months of 1941 when comparatively few sales were made, the merchandise inventory suffered its greatest depletion. His books were not written up for November and December, because he would not pay his accountant who had regularly written up the books at the end of every month before that.

The respondent contends that the trustee has failed to show respondent's ability to comply with the turnover order, and he reminds the court that many months elapsed between the time that the merchandise is said to have disappeared and the time of the turnover order.

Possession having been shown in the respondent, the presumption exists that he still has possession, and he is thereby called upon to explain. A denial of possession alone is insufficient. In re Pinsky-Lapin & Co., 2 Cir., 1938, 98 F.2d 776 (overruling Danish v. Sofranski, 2 Cir., 1937, 93 F.2d 424, relied upon by respondent). See, also, Seligson v. Goldsmith, 2 Cir., 1942, 128 F.2d 977, Rosenblum v. Marinello, 2 Cir., 1943, 133 F.2d 674 and Robbins v. Gottbetter, 2 Cir., 1943, 134 F.2d 843. Turnover orders were made 34 months after the property was taken in the Seligson case; 27 months in the Marinello case; 18 months in the Robbins case; and 41 months in a recent case, In re Union Fabrics, Inc., D. C.S.D.N.Y., 50 F.Supp. 145, 146, where Judge Hulbert wrote: "Upon the record before me it cannot be said that the Referee's findings were so clearly erroneous as to warrant this court to reach a different determination. See, General Order in Bankruptcy, 47, 11 U.S.C.A. following section 53. The proof adduced by the trustee met the requirements prescribed by the Supreme Court in Oriel v. Russell, 278 U. S. 358, 49 S.Ct. 173, 73 L.Ed. 419. True, the trustee did not trace the missing property directly into the petitioner's possession, but he did so indirectly through an analysis of the financial records of the bankrupt, and relied upon the presumption that, in the absence of competent and acceptable proof to the contrary, the petitioner still had such property in his possession and control. That was sufficient basis for a turnover order of this nature. Robbins v. Gottbetter, 2 Cir., April 3, 1943, 134 F. 2d 843; Seligson v. Goldsmith, 2 Cir., 128 F.2d 977."

From a consideration of the record it does not appear that any of the Referee's findings were erroneous. His conclusions of law were correct. The respondent's petition to review is denied. The Referee's order of August 9, 1943, is affirmed. Settle order on notice.