## ROBBINS v. GOTTBETTER.
### No. 219.

Circuit Court of Appeals, Second Circuit.
April 3, 1943.

Stephen Marlowe, of New York City, for appellant.

T. Stanley Bloch, of New York City, for appellee.

Before L. HAND, AUGUSTUS N. HAND, and FRANK, Circuit Judges.

L. HAND, Circuit Judge.

This case comes up on an appeal from an order directing the bankrupt's president to pay to the trustee—"turn over"—the sum of $2500, found to have been withdrawn by him from the bankrupt's assets during its short life which covered only the months of August, September and October, and the first week of November, 1940. The proceeding took the usual form in cases where the trustee does not trace specific assets into the respondent's hands, but proceeds by an analysis of the bankrupt's books. The respondent, for whom the bankrupt was merely a corporate form, failed to give any adequate explanation of the disappearance of more than $2500. He did not challenge the bankrupt's books, and agreed that it started business with an inventory of $5275. He could not, and did not, dispute that there had been spent in the purchase of goods and labor and in the overhead and selling costs, a total of $20,959.19. Nor did he dispute that the sales had netted $10,780.51. That left a difference of $10,178.68 to be accounted for. If we accept the respondent's figure—$1800—as the value of the goods left on hand at the close of business instead of what they brought at the receiver's sale—

$332.60—there was a deficiency of $8378, which would necessarily mean that the sales had been made far below their cost. However, the trustee's accountant excluded overhead and selling costs, and so shall we, though it is not very apparent why that should be done. After deducting these he found that at the end of the business there should have been an inventory of $4237.04, assuming that sales were without profit or loss. He had however reckoned the goods on hand at bankruptcy at only $332.60; but, even if that figure be changed to $1800, the deficiency was still more than $2700. Unless the respondent lost $2700 in selling about $11,000 of goods, to say nothing of about $5600 overhead and selling cost, he must have concealed that much of the bankrupt's property.

Upon his examination under § 21, sub.a, Bankr.Act, 11 U.S.C.A. § 44, sub.a, he had sworn that he never took any orders at a loss; and on the hearing he tried to explain this by saying that he lost very heavily in filling his orders, because the material entering into the blinds which he made cost more than he had expected, and because he had been much interfered with by his labor union. However, both these supposed sources of loss had developed by the end of August, and yet he continued for the next two months to take orders, and not to take them at a loss. The explanation was fabricated; at least we should not be justified in reversing a referee who, having seen him, refused to accept it. We agree that there was "clear and convincing" evidence that he had made away with at least $2500 of the bankrupt's goods.

Whatever was done, was, however, done before November 7th, 1940, and, as we have said, the referee's order was entered in April, 1942, about eighteen months later. If the order was to be valid, the referee had to find, as he did, that the respondent still had the money in his possession and could therefore comply with the order. The trustee did not prove, and of course could not prove, anything of the kind; he, the referee and the district judge all relied upon a presumption that in the absence of evidence that the respondent had spent the money, or had otherwise put it beyond his control, the court could lawfully find that he still had it, and had all of it. In this court there has recently been much difference of opinion on this score, although there is a very substantial body of opinion which supports such a presumption. We last considered the matter in Seligson v. Goldsmith, 2 Cir., 128 F.2d 977, where we collected the decisions and said that we would follow them—against our own judgment.[1] Perhaps it is not worth while to repeat what we said so recently; but my brother FRANK and I are not content to let the matter pass without comment. It has indeed a surface plausibility to invoke a presumption, or to shift the burden of proof, against a respondent who knows the truth; but that plausibility is only skin deep. Such a presumption, or such a shift, presupposes that the other party is free to tell the truth; and in these cases the respondent is never free to do so, and never does. True, it is his own fault that he cannot; and it is most desirable that he should be punished; but neither circumstance can rationally supply the place of his actual ability to comply. There is not the slightest reason to suppose that such loot remains unspent in the hands of any such respondent for a substantial time; there is every reason to expect that much, if not all of it, is quickly dissipated. The whole proceeding is, to the minds of us two, an abuse of the process of the bankruptcy court; but, until the Supreme Court, which has never really considered the matter, sees fit to change the law as it has been settled, we regard ourselves as concluded.

Order affirmed.

AUGUSTUS N. HAND, Circuit Judge (concurring in result).

I concur in the result reached by the majority. I see no ground, however, for protesting against a rule which I believe is implicit in the decisions of the Supreme Court in Oriel v. Russell (Prela v. Hubshman), 278 U.S. 358, 49 S.Ct. 173, 175, 73 L.Ed. 419. Though the appeal in Prela v. Hubshman was from a commitment order, the same question arose which confronts us here, namely, whether the bankrupt still remained in possession of the assets he was shown to have withheld from his trustee. The turnover order in Prela v. Hubshman was made about twenty months after the date of the petition in bankruptcy and the commitment order about fourteen months after the date of the

---

[1] In Rosenblum v. Marinello, 2 Cir., 133 F.2d 674, the propriety of the doctrine was assumed.

turnover order. Nevertheless, all the justices of a court of which those exceptionally alert guardians of civil rights, Justices Holmes, Brandeis and Stone, were members, unanimously concurred in the opinion of Chief Justice Taft, which quoted with approval the remarks of Judge McPherson of the Third Circuit in Re Epstein, 206 F. 568, 569, and concluded by saying:

"In the two cases before us, the contemnors had ample opportunity in the original hearing to be heard as to the fact of concealment, and in the motion for the contempt to show their inability to comply with the turnover order. They did not succeed in meeting the burden which was necessarily theirs in each case, * * *."

I can see no essential difference between the procedure in these bankruptcy turnover orders and that employed in the case of decrees to enforce payment of alimony or restitution by an embezzling trustee. Nor am I persuaded that the creditors of thieving bankrupts should be curtailed in employing the only practical means of obtaining restitution and one which frequently results in substantial recoveries.