[redacted]

**In re UNION FABRICS, Inc.**

District Court, S. D. New York.

April 28, 1943.

[redacted]

Chester A. Lessler, of New York City, for bankrupt.

Glass & Lynch and Parker, Chapin & Flattau, all of New York City (Leslie Kirsch and Albert Parker, both of New York City, of counsel), for trustee.

HULBERT, District Judge.

Abraham Jeskowitz, president of the bankrupt, petitions for a review of an order of the Referee in Bankruptcy, dated February 23, 1943, which directed him to turn over to the trustee in bankruptcy: (1) Merchandise valued at $69,921.24, or the proceeds thereof; (2) the sum of $875, representing the proceeds of the sale of a diamond ring; and (3) certain books and records of the bankrupt, a jobber and converter of silk, rayon and other textiles.

Union Fabrics, Inc., which was incorporated in 1937, became the successor of another corporation known as Union Silk Mills, Inc. All the assets, liabilities, books and records of the latter corporation were taken over by the bankrupt, including a diamond ring which had been pledged by a third party as collateral security for a loan. The predecessor corporation had been controlled by Abraham Jeskowitz and Louis Berkman. When the successor cor-

poration was formed, Jeskowitz acquired all the interest of Berkman and thereupon became the president and sole active officer and stockholder of the bankrupt corporation. As such he admittedly dominated and controlled the bankrupt from its inception.

The bankrupt having become financially involved, on September 28, 1939, made an assignment for the benefit of creditors, to one Saul Freeman, an accountant connected with the firm of David Berdon & Co. On December 20, 1939, an involuntary petition in bankruptcy was filed and an order of adjudication was subsequently made and entered.

After prolonged hearings, at which much testimony was taken, the Referee found that the books and records of the bankrupt reflected two different shortages in the amount of merchandise on hand when the assignment was made. One shortage, amounting to 126,127 yards, was arrived at by using as a starting point, from which computations were made, an inventory taken by the bankrupt in July 1939. The other shortage, amounting to 187,363 1/8 yards, was taken from the perpetual inventory records of the bankrupt. It is claimed by the petitioner that the inventory records had not been properly kept. However, the Referee evidently did not attach much weight to the proof on this score.

The Referee also found that as of the date of the assignment there was an unexplained shortage of $69,921.24 in the bankrupt's assets and that merchandise of that value was presently in the possession and control of the petitioner. This shortage was arrived at by using, as a starting point, a financial statement issued by the bankrupt as of December 31, 1938, to which was added the amount of merchandise purchased up to September 28, 1939; from that total, deductions were made on the merchandise sold at cost during the same period, plus the amount of merchandise on hand when the assignment was made.

The petitioner, as is usual in cases of this nature, denied there was any shortage; denied that he had taken any property, and denied that he had any property of the bankrupt in his possession or control at the date of the institution of the turnover proceeding. He contends that the Referee's findings as to the shortage was erroneous, not because the financial statement or the computations of the trustee's accountant were inaccurate, but because the trustee had failed to take into consideration certain losses resulting from the alleged sale of merchandise below cost. The proof chiefly relied upon by the petitioner in support of this contention was the testimony of a former employee of the bankrupt, whom the Referee found to be "wholly unworthy of belief."

The Referee was best able to judge whether this witness was telling the truth, and his finding in this respect must be accepted by the court in the absence of a showing that it was arbitrary, capricious, or unreasonable. There is no such showing. On the contrary, the record reveals that the witness' testimony was based largely on his personal "recollection" of what had taken place and his computations were shown in many instances to have been either recklessly or designedly erroneous.

As to the diamond ring the Referee found that it belonged to the bankrupt and was sold by the petitioner on July 1st or 5th for $875, which sum is now within the possession and control of the petitioner. The latter admits selling the ring and collecting the proceeds which he claims to have used for living expenses. This testimony the Referee also found to be "wholly unworthy of belief". This finding is supported by the fact that at the time the sale of the ring was made, the petitioner was drawing a salary of $225 per week from the bankrupt.

It was amply established that the missing books and records were in petitioner's possession prior to the assignment and were not turned over to the assignee or the trustee. In view of the petitioner's admission that he dominated and controlled the affairs of the bankrupt, it was incumbent upon him to account for the whereabouts of these books and records. This he did not do, and the presumption is that they are still in his possession and control.

Upon the record before me it cannot be said that the Referee's findings were so clearly erroneous as to warrant this court to reach a different determination. See, General Order in Bankruptcy, 47, 11 U.S. C.A. following section 53. The proof adduced by the trustee met the requirements prescribed by the Supreme Court in Oriel v. Russell, 278 U.S. 358, 49 S.Ct. 173, 73 L.Ed. 419. True, the trustee did not trace the missing property directly into the petitioner's possession, but he did so indirectly

through an analysis of the financial records of the bankrupt, and relied upon the presumption that, in the absence of competent and acceptable proof to the contrary, the petitioner still had such property in his possession and control. That was sufficient basis for a turnover order of this nature. Robbins v. Gottbetter, 2 Cir., April 3, 1943, 134 F.2d 843; Seligson v. Goldsmith, 2 Cir., 128 F.2d 977.

Petition for review is denied and the order of the Referee will be confirmed. Settle order on notice.