## COHEN v. JESKOWITZ.
### No. 386.

Circuit Court of Appeals, Second Circuit.

July 21, 1944.

Writ of Certiorari Denied Dec. 4, 1944.

See 65 S.Ct. 270.

Chester A. Lessler, of New York City, for appellant Abraham Jeskowitz.

Glass & Lynch, of New York City (Leslie Kirsch, Albert Parker, Samuel Bader, and Sydney W. Cable, all of New York City, of counsel), for appellee Leonard H. Cohen.

Before AUGUSTUS N. HAND, CHASE, and FRANK, Circuit Judges.

AUGUSTUS N. HAND, Circuit Judge.

This is a turnover proceeding brought by the trustee in bankruptcy of United Fabrics, Inc., against Abraham Jeskowitz. The latter was the president and sole stockholder of United Fabrics, Inc. He is charged with failing to account for merchandise valued at $69,921.24, the proceeds of a ring amounting to $875, and the following books and papers under his control: Journal for the year 1938; general ledger for the year 1937; all inventory sheets for the years 1937, 1938 and 1939, and all purchase invoices for the year 1937. Jeskowitz testified that he had no merchandise of United Fabrics, Inc., or its proceeds, in his possession, and none has been physically discovered through the efforts of the trustee. He further testified that he had sold the ring, which credible evidence indicated was collateral for a loan by the corporation to one of its debtors, and that he had used the proceeds for living expenses. He offered no explanation for failing to account for the books and records with which he was charged and over which he undoubtedly had control.

An inventory of the merchandise of Union Fabrics, Inc., was taken about January 1, 1939, by employees of the company in order to obtain a loan from the Bank of Manhattan and Jeskowitz set a value on it of $194,785.05. The bankrupt purchased merchandise between January 1, 1939, and the making of a general assignment for the benefit of creditors on September 28, 1939, at a cost of $218,331.91. This figure was a net amount reached after allowing $23,806.10 which represented the value of goods returned to the vendors. Jeskowitz testified that all the merchandise which was not on hand at the time of the assignment was sold at an advance of about 10%. The sheets for the inventory were not found by the trustee, but Jeskowitz's accountant, Michaelson, testified that the value fixed at the time the inventory was taken in order to furnish the financial statement was at cost or market, whichever was lower. The merchandise on hand at the date of the assignment based on the detailed inventory of the cost of the merchandise which was verified by Jeskowitz was of the value of $20,628.36.

The merchandise sold between January 1, 1939, and September 28, 1939, taken at

cost, was of the value of $322,587.36. This value was based on a computation by the trustee's accountant of sales recorded in the bankrupt's sales books and sales return books. As the inventory sheets and the records that would disclose the cost were missing, Section 21, sub. *l* of the Bankruptcy Act, 11 U.S.C.A. § 44, sub. *l*, required the referee to presume "until the contrary shall appear, that such property was sold at a price not less than the cost * * *." The referee applied the presumption as he was bound to do.

The result of the foregoing figures upon which the shortage was computed resulted in the following finding of the referee:

| | | |
|---|---:|---:|
| Bankrupt had merchandise on hand on January 1st, 1939 of the value of (Financial Statement, Trustee's exhibit 1, 10/24/41) | $194,785.05 | |
| Merchandise was purchased during period from January 1st, 1939 to September 28th, 1939, net | 218,351.91 | |
| Total merchandise to be accounted for | | $413,136.96 |
| Less: Cost of merchandise sold during period January 1st, 1939 to September 28th, 1939, assuming sales at not less than cost for though respondent, Jeskowitz, had testified at an adjourned first meeting that the sales price represented a markup of 10% gross (Trustee's exhibit 12, adjourned 1st mtg. October 24th, 1941, pp. 36–38) the respondent I find to be wholly unworthy of belief and therefore no testimony by him can be given any credence, on the other hand the witness, Gelbart, who gave testimony of sales below cost was proved to be totally unreliable and utterly unworthy of belief (See Bankruptcy Act Section 21-L) | 322,587.36 | |
| Merchandise on hand September 28th, 1939 (S. M. 322-4) | 20,628.36 | 343,215.72 |
| Shortage as of September 28th, 1939 | | $ 69,921.24 |

There was testimony by Gelbart, a former employee of the bankrupt, that there were losses on sales of particular merchandise amounting to $34,198.61, but his testimony was disbelieved by the referee, as it was based largely on his personal recollection as to a mass of transactions, the details of which could hardly be remembered, rather than on pertinent records, which were largely missing. This witness also claimed that certain old merchandise, purchased prior to January, 1937, was valued at the time it was received from the predecessor-corporation at an arbitrary figure of 25% below its actual cost. But this statement was made only upon recollection and was discredited by the fact that the inventory valuation furnished by the bankrupt in order to obtain a loan from a bank exactly corresponded with the very inventory valuation that Gelbart testified reflected a devaluation of 25% below actual cost. Gelbart also testified that the bankrupt was entitled to a credit of $8,090.94 because merchandise of that value had been sold but not delivered prior to December 31, 1938, and was, therefore, erroneously included in the December 31 inventory. This testimony was discredited, for the books showed the sale of this merchandise on January 2, 1939, and in addition to this proof was entirely absent that it was included in the December 31, 1938, inventory even if it could be said to have been sold during that month.

In view of the foregoing, the referee was entirely justified in disbelieving Gelbart and Jeskowitz. The financial statement was fortified by credible evidence and the figures on which the shortage was computed were supported by the financial statement and substantial oral testimony.

Under the rules which have been frequently applied in interpreting the decision of the Supreme Court in Oriel v. Russell, 278 U.S. 358, 49 S.Ct. 173, 73 L.Ed. 419, we think that the turnover order should be affirmed. In spite of Jeskowitz's testimony that he was in possession of no merchandise or moneys belonging to the bankrupt, it is to be noted that he was receiving a salary from the bankrupt amounting in June, 1939, to $1,125 and in July, 1939, to $825, and that he withdrew from the bankrupt $12,000 in excess of his salary for his personal use. Under these circumstances the referee might properly reject his claim that he had used the proceeds of the sale of the diamond ring for living expenses.

Order affirmed.

FRANK, Circuit Judge (concurring).

I concur but with the hope, expressed by Judge Learned Hand in Robbins v. Gottbetter, 2 Cir., 134 F.2d 843, 844 and Seligson v. Goldsmith, 2 Cir., 128 F.2d 977, 978, 979, that the Supreme Court will soon grant certiorari in some such case as

this and overrule precedents that fasten upon us what seems to him and me an irrational rule of presumption, obviously contrary to fact, which enables trustees in bankruptcy to employ civil actions as substitutes for criminal proceedings.