## BRUNE v. FRAIDIN.
### No. 5300.

Circuit Court of Appeals, Fourth Circuit.
Jan. 2, 1945.

Paul R. Kach, of Baltimore, Md. (Louis J. Sagner, of Baltimore, Md., on the brief), for appellant.

Samuel J. Fisher, of Baltimore, Md. (Wilfred T. McQuaid, of Baltimore, Md., on the brief), for appellee.

Before PARKER and DOBIE, Circuit Judges, and HARRY E. WATKINS, District Judge.

HARRY E. WATKINS, District Judge.

This is an appeal by the trustee from an order of the District Court affirming the referee in dismissing the trustee's petition for a turnover order against the bankrupt. It is another case where the trustee does not trace specific assets into the bankrupt's hands, but relies entirely for his proof on a shortage in merchandise values estimated or determined by an accounting method, and upon the much discussed presumption of continued possession of the goods or their cost value in money.

The District Court held (1) that the interval between the date of bankruptcy and the application for the turnover order, under the circumstances of the case, precluded the effective application of the presumption as to continued possession, and (2) that the evidence with regard to the merchandise shortage was not sufficiently clear and convincing to require a turnover order. We agree with the District Judge on both propositions.

The bankrupt was engaged in the sale at retail of cosmetics, drug supplies and similar articles in Baltimore. He also compounded certain cosmetics in a manufacturing establishment on the second and third floors of his place of business. An involuntary petition in bankruptcy was filed against him on August 26, 1940. The trustee objected to his discharge and a dis-

charge was refused by Referee Parker on two grounds, failure to keep sufficient books, and concealment of assets, after a full hearing before the referee upon both charges. Upon review of that order, the District Court on November 10, 1942, affirmed the action of the referee on the ground of failure to keep sufficient books of account. On July 23, 1943, nearly three years after the bankruptcy proceeding began, the trustee filed with Referee Kintner his petition for a turnover order against the bankrupt. In opposing discharge the trustee claimed a shortage of $39,000. In this turnover proceeding the amount claimed was $20,795 at one time, $26,728.89 at another, and then a total shortage of $32,264.-23 was claimed in the trustee's last amended turnover petition. The bankrupt denied any shortage. Evidence taken shows that the bankrupt was hard pressed for cash, resorted to gambling, and kept no books. He filed an income tax report for 1939, showing a net profit of $6,806. Between January 1 and July 27, 1940, he withdrew $6,642 for salary and personal expenses. Shortly after bankruptcy he was convicted in the District Court of a criminal offense in connection with the sale of alcohol and served six months in prison. On January 7, 1944, after three years and four months had elapsed, the case was submitted to the referee for decision. On February 17, 1944, the referee dismissed the petition. He found that there was a merchandise shortage "before the bankruptcy of goods of the value of $12,761.70". However, he concluded that since the trustee relied entirely for his proof of present possession upon the presumption of continued possession, the interval of more than three years between the date of bankruptcy and the hearing on the turnover order, so weakened such presumption that it could not be sustained as a matter of fact. We think the District Judge was correct in affirming the referee upon this point.

■ Counsel for the trustee contends that in a turnover proceeding it is not necessary or proper to consider the question as to whether the bankrupt had the then present ability to comply with the order, either by turning over the merchandise or the proceeds of sale. He says that since the referee found a merchandise shortage at the time of bankruptcy, he should have entered a turnover order automatically, leaving the question of present possession open for consideration on possible subsequent contempt proceedings. Such is the holding of the Third Circuit. In re Eisenberg, 3 Cir., 130 F.2d 160, 162; In re Amdur. 3 Cir., 137 F.2d 708, 710. These cases hold that in proceedings for a turnover order the sole burden upon the trustee is to prove possession or control of property belonging to the bankrupt estate at the time of filing the petition in bankruptcy and failure to deliver such property to the trustee, without the necessity of showing continued possession or ability to turn over at the time of making the turnover order. In the Second Circuit it is necessary for the trustee to prove not only possession at the time of filing petition in bankruptcy, but also possession or control at the time of the turnover proceedings. In re Pinsky-Lapin Co., 2 Cir., 98 F.2d 776; Seligson v. Goldsmith, 2 Cir., 128 F.2d 977; Robbins v. Gottbetter, 2 Cir., 134 F.2d 843; Cohen v. Jeskowitz, 2 Cir., 144 F.2d 39.

We agree with the view expressed by the Second Circuit, which was here followed by the referee and the District Judge, and which is supported by the weight of authority. In the matter of J. L. Marks & Co., 7 Cir., 85 F.2d 392; In re Rosser, 8 Cir., 101 F. 562; Marin v. Ellis, 8 Cir., 15 F.2d 321; In re Goldman, 1 Cir., 62 F.2d 421, 424. The exact question has not heretofore arisen in this court, although in Kirsner v. Taliaferro, 4 Cir., 202 F. 51, it was strongly indicated that in a turnover proceeding proof of continued possession or ability to comply at the time of the turnover order was necessary.

■ This difficulty in proof of present possession has been met by the courts with a presumption. The courts have consistently held that the trustee has the burden of showing that the bankrupt withheld assets belonging to the estate, but after such possession is shown there is a presumption that the bankrupt still has the assets, and the burden is on him to prove his inability to turn them over. See 8 C.J.S., Bankruptcy, § 206, p. 676 and cases there cited. The rule was the same under the law of 1867 and also under the English Bankruptcy Law. Remington on Bankruptcy, 4th Ed., Sec. 2420 and cases there cited. The mere denial of the bankrupt is not alone sufficient to meet this presumption.

■ In deciding whether possession has continued, this presumption is considered in the light of all the evidence in the case. The presumption of continued pos-

session is only as strong as the nature of the circumstances permits. The presumption loses its force and effect as time intervenes and as circumstances indicate that the bankrupt is no longer in possession of the missing goods or their proceeds. Where the property is of the type which the bankrupt would likely dissipate such as money or saleable goods, the presumption is further weakened. Such presumption of continuing possession in bankruptcy cases is an application of a general and well recognized rule of the law of evidence. With reference to the effect of lapse of time upon this presumption, see 31 C.J.S., Evidence, § 124, page 737, as follows: "Always strongest in the beginning the inference steadily diminishes in force with lapse of time, at a rate proportionate to the quality of permanence belonging to the fact in question, until it ceases or perhaps is supplanted by a directly opposite inference."

Here the evidence points to the improbability that the bankrupt now retains any of the money derived from the sale of the goods. The presumption has diminished with the lapse of time, and the benefit of that presumption as supplying the necessary proof, is gone. The trustee has relied entirely upon two presumptions of law, (1) that the property was sold at a price not less than the cost thereof, Sec. 21, sub. *l*, Chandler Act, 11 U.S.C.A. § 44, sub. *l*, and (2) that possession having been proven, it continues down to the date of hearing. No effort was made by the trustee to prove actual possession later than August 26, 1940, the date of bankruptcy. There are many reported cases where these presumptions were held sufficient for a turnover order. But in most of those cases the circumstances have indicated, and the court has been of opinion that the person proceeded against still had the merchandise or its proceeds in his possession and was not telling the truth when asserting his inability to comply.

Directly in point is the case of Marin v. Ellis, supra. Two years and four months had elapsed between the date of adjudication and the turnover order, although the turnover petition was filed within ten months of adjudication. In an opinion fully considering the time factor in such proceedings, Circuit Judge Walter H. Sanborn held that in view of the delays in filing the petition and bringing it to a hearing, and because of the long time that elapsed, seventeen months, between the adjudication and the hearing on the petition, the presumption lost its force and effect, and the petition was dismissed. In Danish v. Sofranski, 2 Cir., 93 F.2d 424, certiorari denied, 303 U.S. 641, 58 S.Ct. 610, 82 L.Ed. 1101, where there was a lapse of two years, it was held that the presumption of continuing possession was dispelled by the long delay.

■ But there is a second reason why there should be no turnover order in this case. In Oriel v. Russell, 278 U.S. 358, 362, 49 S.Ct. 173, 174, 73 L.Ed. 419, Chief Justice Taft said:

"We think a proceeding for a turnover order in bankruptcy is one the right to which should be supported by clear and convincing evidence. The charge upon which the order is asked is that the bankrupt, having possession of property which he knew should have been delivered by him to the trustee, refuses to comply with his obligation in this regard. It is a charge equivalent to one of fraud, and must be established by the same kind of evidence required in a case of fraud in a court of equity. A mere preponderance of evidence in such a case is not enough. The proceeding is one in which coercive methods by imprisonment are probable and are foreshadowed. The referee and the court in passing on the issue under such a turnover motion should therefore require clear evidence of the justice of such an order before it is made. Being made, it should be given weight in the future proceedings as one that may not be collaterally attacked by an effort to try over the issue already heard and decided at the turnover. Thereafter on the motion for commitment the only evidence that can be considered is the evidence of something that has happened since the turnover order was made showing that since that time there has newly arisen an inability on the part of the bankrupt to comply with the turnover order. * * *

"A turnover order must be regarded as a real and serious step in the bankruptcy proceedings, and should be promptly followed by commitment, unless the bankrupt can show a change of situation after the turnover order relieving him from compliance."

■ Applying these principles to the present case, the evidence as to the merchandise shortage and the amount thereof is not so clear and convincing as to justify a turnover order. The District Judge has

appropriately summarized the evidence as follows [55 F.Supp. 129, 131]: "The shortage found by the referee was not of specific articles of merchandise but only a shortage in values estimated or determined by an accounting method based in material respects on uncertain data and some assumptions, more or less arbitrary, in view of the nonexistence of a proper set of books. And even this computed shortage was based on evidence apparently much less clear and convincing than existed in some of the cases where this general method of establishing shortage was found sufficient."

This finding of the District Judge becomes very significant when we consider that the same judge had previously been asked to deny a discharge because of such merchandise shortage. After a full hearing on this issue the discharge was denied, but only on the ground of failure to keep proper books of account.

The delay of almost three years in filing the turnover petition, and the loss, through no fault of the bankrupt, of an inventory taken shortly before the bankruptcy, has added to the difficulty and confusion. The difficulty is illustrated in the referee's findings of fact concerning merchandise markdown, wherein he admits that his finding on that issue "must be arbitrary because no mathematical calculation can be made from available facts". While it may be true that the bankrupt has failed to account satisfactorily for some of the merchandise, estimates and calculations based on such uncertain evidence are not reliable enough to justify an order that may send a man to jail for an indefinite period. It is not necessary for us to decide whether the finding of the referee as to a merchandise shortage is clearly erroneous. Under Oriel v. Russell, supra, the evidence must be clear and convincing and it is inconceivable how anyone could believe that the evidence presented meets this test. In the absence of clear and convincing evidence to establish possession at the time of bankruptcy, there is no presumption of continued possession, and it makes no difference whether the decisions of the Second or Third Circuits are followed. The result is the same —the petition must be dismissed.

Here the situation is well summarized by the District Judge as follows: "On the issue of the turnover order it may very well be that the only burden of prima facie proof imposed on the trustee is limited to establishing possession by the bankrupt at the time of bankruptcy, and his failure to turn over the missing goods to the trustee. But where on the trial of such an issue it also appears from the evidence that there is no reasonable probability of the continued possession or control of the missing property or its proceeds by the bankrupt, or in other words that the bankrupt cannot comply with the turnover order, it seems a futile thing to pass an order which (as was said in the Oriel case), is preliminary to a contempt proceeding, when the latter could not properly result in imprisonment for failure of the bankrupt to comply. The findings of the referee with regard to possession in this case are to this effect. And in such a situation it does not seem a proper use of judicial process to pass a turnover order for its possible in terrorem effect only."

A turnover order is not a money judgment saying that the bankrupt ought to have the merchandise or its proceeds. It is the court's command that he surrender, and necessarily presupposes ability to comply. Obviously the court should not order one to do something that was impossible and then punish him for failure to do it. It has been said that such procedure dangerously approaches near the line, if it does not overstep it, of imprisonment for debt. If the bankrupt has concealed and then dissipated assets of the estate, punishment should be sought under the provisions of the bankrupt law relating to making of false oaths or concealment of assets. The bankruptcy courts are invested with power to require bankrupts to surrender their property and to enforce obedience by attachment for contempt, but a power so drastic should be exercised only in a plain case and always with due regard to the constitutional rights of the citizen. In re Miller v. Harbaugh, 9 Cir., 54 F.2d 612; Samuel v. Dodd et al., 5 Cir., 142 F. 68.

The order of the District Court is affirmed.

Affirmed.