In re LUMA CAMERA SERVICE, Inc.

No. 31, Docket 20284.

Circuit Court of Appeals, Second Circuit.

Nov. 11, 1946.

Max Schwartz, of New York City, for appellant.

Glass & Lynch and Benjamin H. Wicksel, both of New York City (Leslie Kirsch and Sidney Freiberg, both of New York City, of counsel), for appellee.

Before L. HAND, SWAN, and FRANK, Circuit Judges.

FRANK, Circuit Judge.

1. To obtain the turnover order, the trustee had the burden of proving, by

"clear and convincing evidence,"[1] these two facts: (a) That Maggio wrongfully took (i.e., stole) the merchandise in November and December 1941, and (b) that he still possessed it, or its proceeds, when the referee entered that order one year and nine months later, in August 1943. With respect to the first, the trustee showed the shortage which occurred at the end of 1941; there was sufficient evidence to support the referee's finding as to that fact (i. e., the finding was not "clearly erroneous"). The trustee offered no evidence to prove the second fact. To sustain his burden of showing, by "clear and convincing evidence," that Maggio still had possession, the trustee relied on the following reasoning: The shortage, having established the theft, at the end of 1941, also established Maggio's possession twenty-one months later; for the stealing raised a "presumption" that he then continued to retain the goods or their proceeds, and it was therefore up to Maggio to prove otherwise, which he did not do.

Were this a case of first impression involving the validity of a turnover order, we would not accept such reasoning. A "presumption"—an inference—that a state of facts once existing continues to exist is often sound, because in accord with common sense. But all the circumstances of a case like this render the inference here highly unreasonable, since it contradicts any common-sensible interpretation of ordinary human motivations. Indeed, accepting the referee's finding that Maggio took the merchandise in 1941, the only reasonable inference is that Maggio, needing money as obviously he did, promptly disposed of the cameras and camera equipment, and that he dissipated the cash proceeds long before the expiration of the twenty-one months when the turnover order was entered (and even long before the commencement of the turnover proceedings in April 1943, some eighteen months after

the taking). In any other type of litigation, a court would reject a finding based upon such an inference which flies in the face of the reasonably inferable facts. "The presumption of continued possession is only as strong as the nature of the circumstances permits. The presumption loses its force and effect as time intervenes and as circumstances indicate that the bankrupt is no longer in possession of the missing goods or their proceeds. Where the property is of the type which the bankrupt would likely dissipate such as money or saleable goods, the presumption is further weakened. Such presumption of continuing possession in bankruptcy cases is an application of a general and well recognized rule of the law of evidence. With reference to the effect of lapse of time upon this presumption, see 31 C.J.S., Evidence, § 124, page 737, as follows: 'Always strongest in the beginning the inference steadily diminishes in force with lapse of time, at a rate proportionate to the quality of permanence belonging to the fact in question, until it ceases or perhaps is supplanted by a directly opposite inference.' "[2]

Here, were we free to do so, we would say that, since of course Maggio no longer had possession, the trustee did not seek to have Maggio surrender goods or money he possessed, but sought, with the aid of a transparent fiction, to have the court, after a trial without a jury punish him for a crime (i.e., that of concealing assets or of a false oath in a bankruptcy proceeding)[3] with the hope that such punishment would induce Maggio's close relatives and friends to put up the money. We would refer to Judge Mack's comment on the impropriety of thus coercing such relatives and friends.[4] We would hold that a *turnover proceeding may not, via a fiction, be substituted for a criminal prosecution so as to deprive a man of a basic constitutional right, the right of trial by jury.*[5] We

---

[1] Oriel v. Russell, 278 U.S. 358, 362, 49 S.Ct. 173, 73 L.Ed. 419.

[2] Brune v. Fraidin, 4 Cir., 149 F.2d 325, 327 (C.C.A.4).

See also Liverpool & London & Globe Ins. Co. of Liverpool, England v. Nebraska Storage Warehouses, 8 Cir., 96 F.2d 30, 36.

[3] See 11 U.S.C.A. § 52, sub. b(1) and (2).

[4] Freed v. Central Trust Co. of Illinois, 7 Cir., 215 F. 873, 877.

[5] Cf. Sanborn, J., in In re Rosser, 8 Cir., 101 F. 562, 566.

would note, too, that one consequence of the fiction is that the respondent may be twice punished for the same offense, since, if he is later indicted for violation of 11 U.S.C.A. § 52(b), his imprisonment for contempt will not serve as a defense. We would add that nowhere in the Bankruptcy Act has Congress even intimated an intention to authorize such results, and that they stem solely from a judge-made gloss on the statute.

■ As Judge L. Hand observed in Robbins v. Gottbetter, 2 Cir., 134 F.2d 843, 844, the Supreme Court has never decided in favor of the fictitious "presumption" here invoked. On the contrary, it has often ruled that a fiction must never be used to work injustice, or "to obscure the facts, when [they] become important," or when the fiction is "unrelated to reality."[6] True, the Supreme Court has several times denied certiorari as to our decisions which utilized this particular "presumption," and did so with respect to our decision on the previous appeal in the instant case. But we have been admonished frequently that denial of certiorari has no precedential significance.

However, the decisions in this circuit sanctioning this "presumption" fiction[7] constrained this court, on the previous appeal, to decide, without opinion, that the referee had correctly rested his finding on that "presumption," despite its glaring departure from what any reasonable person would believe were the actual facts.

■ With the turnover order once sustained, the contempt order necessarily followed. For, under Oriel v. Russell, 278 U.S. 358, 49 S.Ct. 173, 73 L.Ed. 419, the findings made in connection with the turnover order were res judicata in the con-

tempt proceedings. That is to say, the judge, on June 5, 1945, had to accept it as true (1) that on August 9, 1943, Maggio still had possession of the merchandise taken in December 1941, or its proceeds, and also (2) that this possession continued until June 5, 1945 (i.e., continued for four years and five months after the taking in 1941), unless Maggio showed that, since August 9, 1943, he had been deprived of that possession or had in some other way become unable to comply with the turnover order. As Maggio made no such showing of an intervening change of facts, there was no error in the entry of the contempt order.

■ 2. It is, however, urged as error that the trial judge ignored Maggio's seriously impaired health. We think it clear that the judge did ignore it. (The trustee says in his brief that, on a motion by Maggio for stay of commitment, the trustee showed the court a medical report from which it appeared that Maggio was not gravely ill; since the record does not contain that report or indicate in any way that the district judge saw or considered it, we must, of course, disregard it, for ours is not a trial court.) We assume, arguendo, that if the proceedings had been in form what they were in fact, i.e., a criminal action under 11 U.S.C.A. § 52(b), we would have had the authority to consider whether, in the light of Maggio's grave heart ailment, the trial judge abused his discretion in jailing Maggio.

But, even so, Maggio's malady is surely irrelevant—unless we do away with the fictitious foundation of these proceedings. For assuming, as the fiction requires, that, at the time of his commitment, he had the ability to comply with the turnover order,

6 Curry v. McCanless, 307 U.S. 357, 374, 59 S.Ct. 900, 909, 83 L.Ed. 1339, 123 A.L.R. 162; Story, J., in United States v. Nineteen Hundred and Sixty Bags of Coffee, 8 Cranch 398, 415; Holmes, J., in Blackstone v. Miller, 188 U.S. 189, 204, 23 S.Ct. 277, 278, 47 L. Ed. 439; Helvering v. Stockholms Enskilda Bank, 293 U.S. 84, 92, 55 S.Ct. 50, 79 L.Ed. 211; Liverpool, etc., Ins. Co. v. Board of Assessors for the Parish of Orleans Assessors, 221 U.S. 346, 354, 31 S.Ct. 550, 55 L.Ed. 762, L.R.A.1915C, 903.

See discussion of fictions and cases cited in Hammond-Knowlton v. United States, 2 Cir., 121 F.2d 192, 199, 200.

7 See, e. g., In re Pinsky-Lapin Co., 2 Cir., 98 F.2d 776; Seligson v. Goldsmith, 2 Cir., 128 F.2d 977; Robbins v. Gottbetter, 2 Cir., 134 F.2d 843; Cohen v. Jeskowitz, 2 Cir., 144 F.2d 39; cf. In the Matter of Union Fabrics, Inc., 2 Cir., 153 F.2d 303; Rosenblum v. Marinello, 2 Cir., 133 F.2d 674.

he could easily have avoided the effect of imprisonment on his health by immediately surrendering the merchandise to the trustee or by promptly drawing a check for $17,500 to the trustee's order. On that assumption, the situation is precisely the same as if a man, who had been ordered by a court to execute a deed, sought, on a plea of ill-health, to avoid commitment for contempt for disobeying the order.

Although we know that Maggio cannot comply with the order, we must keep a straight face and pretend that he can, and must thus affirm orders which first direct Maggio "to do an impossibility, and then punish him for refusal to perform it."[8] Our own precedents keep us from abandoning that pretense which, in this case, may well lead to inhumane treatment of Maggio and which, in other turnover cases, has brought about a revival of those evils of the debtors' prison which legislation like the Bankruptcy Act was supposed to abolish. See Douglas (now Mr. Justice Douglas), Bankruptcy, 2 Encyc. of Soc.Sc. (1930) 449.[9] It is an open secret that Maggio is being punished as if for a crime, but we are precluded from so acknowledging.

To eliminate the unfortunate results of the unreasonable fiction we have adopted, it will be necessary for the Supreme Court to grant certiorari and then to wipe out our more recent precedents. In this connection, it is well to note that the judges of this court have not been in accord concerning the wisdom of the fiction above discussed. In Danish v. Sofranski, 2 Cir., 93 F.2d 424, this court, in an opinion by Judge Hand, all but abandoned the fiction. At the next term, however, in In re Pinsky-Lapin & Co., 2 Cir., 98 F.2d 776 (L. Hand, A. N. Hand, and Chase sitting), the Danish case was over-ruled; Judge L. Hand concurred in the result but with a criticism of the reasoning. In Seligson v. Goldsmith, 2 Cir., 128 F.2d 977, this court (L. Hand, Swan and Frank), in an opinion by Judge L. Hand, reluctantly adhered to the ruling in Pinsky-Lapin & Co., supra. In Robbins v. Gottbetter, 2 Cir., 134 F.2d 843 (L. Hand, A. N. Hand and Frank sitting), the opinion by Judge L. Hand stated that he and the writer of the present opinion were highly critical of the fiction but acquiesced in the previous ruling. In Cohen v. Jeskowitz, 2 Cir., 144 F.2d 39 (A. N. Hand, Chase and Frank), the writer of the present opinion concurred but again expressed agreement with Judge L. Hand's views.[10] It should also be noted that a conflict between the Circuits now exists, since, in Brune v. Fraidin, 149 F.2d 325, the Fourth Circuit, in an excellent opinion by Judge Watkins,[11] has repudiated the "presumption" doctrine when carried to the extent required by our recent decisions, which decisions we feel obliged to follow in the instant case.

What we have said should make it plain that, under those decisions, the district judge was compelled to give no heed to those humane considerations [12] which doubtless would have influenced him had Maggio

---

[8] Sanborn, C. J., in In re Rosser, 8 Cir., 101 F. 562, 566, 568.

[9] See also Radin, Debt, 5 Encyc.Soc. Sc. (1931) 32, 37–38.

[10] Since then, in two cases decided without opinion, we stuck to the fiction; see Zeitz v. Maggio, 2 Cir., 145 F.2d 241; (L. H., Swan and Clark); In the Matter of Union Fabrics, Inc., 2 Cir., 153 F. 2d 303, (Swan, Clark and Frank).

[11] The court said (149 F.2d at page 329): "A turnover order is not a money judgment saying that the bankrupt ought to have the merchandise or its proceeds. It is the court's command that he surrender, and necessarily presupposes ability to comply. Obviously the court should not order one to do something that was impossible and then punish him for failure to do it. It has been said that such procedure dangerously approaches near the line, if it does not overstep it, of imprisonment for debt. If the bankrupt has concealed and then dissipated assets of the estate, punishment should be sought under the provisions of the bankrupt law relating to making of false oaths or concealment of assets. The bankruptcy courts are invested with power to require bankrupts to surrender their property and to enforce obedience by attachment for contempt, but a power so drastic should be exercised only in a plain case and always with due regard to the constitutional rights of the citizen."

[12] An intimation to the contrary, in Re Siegler, 2 Cir., 31 F.2d 972, 974, must be taken as dictum, since there we reversed an order refusing to adjudge the bankrupt in contempt.

been, in form, as he was in fact, convicted of a crime. In other words, Maggio is worse off than if he had been criminally prosecuted.

Affirmed.

SWAN, Circuit Judge, concurs in the result.