In the Matter of J. E. WALL, District Director,

v.

W. Horace LOWDER (two cases).

In the Matter of J. E. WALL, District Director,

v.

W. A. LOWDER.

Nos. C-74-S-60, C-84-S-60.

United States District Court
M. D. North Carolina,
Salisbury Division.

Aug. 9, 1960.

James E. Holshouser, U. S. Atty., and H. Vernon Hart, Asst. U. S. Atty., Greensboro, N. C., for petitioner.

Russell M. Robinson II, and J. Carlton Fleming, Charlotte, N. C., and G. Hobart Morton, Albemarle, N. C., for respondents, W. Horace Lowder and W. A. Lowder.

EDWIN M. STANLEY, District Judge.

These are proceedings pursuant to the provisions of Section 7604, Internal Rev-

enue Code of 1954, 26 U.S.C.A. § 7604,[1] to enforce summonses issued by the Internal Revenue Service pursuant to the provisions of Section 7602, Internal Revenue Code of 1954, 26 U.S.C.A. § 7602.[2] The question for determination is whether or not the evidence offered at the hearing is sufficient to warrant a finding that either or both of the respondents currently have in their possession certain corporate books, papers and records specified in summonses, and not produced.

During the early part of 1959, the Internal Revenue Service commenced an examination of various books and records of All Star Mills, Inc., and Lowder Farms, Inc., of Albemarle, North Carolina, and Carolina Feed Mills, Inc., of Cheraw, South Carolina. The investigations covered the years 1950 through 1958, and pertained to the tax liability of the three corporations and several individual stockholders and officers of the corporations.

At all times pertinent, W. Horace Lowder, a resident of Albemarle, North Carolina, within the jurisdiction of this court, was a corporate officer of Lowder Farms, Inc., and All Star Mills, Inc., and had charge of the books and records of said corporations, and W. A. Lowder, also a resident of Albemarle, North Carolina, was a corporate officer of Carolina Feed Mills, Inc., and had charge of the books and records of that corporation.

The investigations were conducted by one or more agents of the Internal Revenue Service in the offices of the three corporations from January, 1959, until April 28, 1959, when Horace W. Lowder ordered one of the agents to leave and not return. During this period, the agents had examined some of the books and

1. 26 U.S.C.A. "§ 7604. *Enforcement of summons.*

"(a) *Jurisdiction of district court.*— If any person is summoned under the internal revenue laws to appear, to testify, or to produce books, papers, records, or other data, the United States district court for the district in which such person resides or is found shall have jurisdiction by appropriate process to compel such attendance, testimony, or production of books, papers, records, or other data.

"(b) *Enforcement.*—Whenever any person summoned under section 7602 neglects or refuses to obey such summons, or to produce books, papers, records, or other data, or to give testimony, as required, the Secretary or his delegate may apply to the judge of the district court or to a United States commissioner for the district within which the person so summoned resides or is found for an attachment against him as for a contempt. It shall be the duty of the judge or commissioner to hear the application, and, if satisfactory proof is made, to issue an attachment, directed to some proper officer, for the arrest of such person, and upon his being brought before him to proceed to a hearing of the case; and upon such hearing the judge or the United States commissioner shall have power to make such order as he shall deem proper, not inconsistent with the law for the punishment of contempts, to enforce obedience to the requirements of the summons and to punish such person for his default or disobedience."

2. 26 U.S.C.A. "§ 7602. *Examination of books and witnesses*

"For the purpose of ascertaining the correctness of any return, making a return where none has been made, determining the liability of any person for any internal revenue tax or the liability at law or in equity of any transferee or fiduciary of any person in respect of any internal revenue tax, or collecting any such liability, the Secretary or his delegate is authorized—

"(1) To examine any' books, papers, records, or other data which may be relevant or material to such inquiry;

"(2) To summon the person liable for tax or required to perform the act, or any officer or employee of such person, or any person having possession, custody, or care of books of account containing entries relating to the business of the person liable for tax or required to perform the act, or any other person the Secretary or his delegate may deem proper, to appear before the Secretary or his delegate at a time and place named in the summons and to produce such books, papers, records, or other data, and to give such testimony, under oath, as may be relevant or material to such inquiry; and

"(3) To take such testimony of the person concerned under oath, as may be relevant or material to such inquiry."

records of all the corporations for many of the years mentioned.

On May 4, 1959, at the request of agents for the Internal Revenue Service, the respondents agreed that the corporate records for the years in question would be made available for inspection and examination by other agents. The investigation was continued until July 15, 1959, when the respondents were advised that the agents were temporarily leaving for the purpose of investigating third party records, but would later resume their investigation of the books and records of the three corporations. Between May 4, 1959, and July 15, 1959, it became more and more difficult for the agents to gain access to certain vital books and records they desired to examine.

For several months following July 15, 1959, the agents worked at various banks and other businesses examining third party records. In September, 1959, certain records of the three corporations were examined at the office of the certified public accountant who was, and had been for several years, retained by the corporations to audit the books and records of the corporations and file tax returns.

In the early part of 1960, the respondents were requested, on behalf of the corporations in question, to consent to an extension of the statute of limitations for certain years, but they refused to sign the consents.

On May 4, 1960, the agents returned to the offices of Lowder Farms, Inc., and All Star Mills, Inc., and requested certain books and records of said corporations for the years 1952 through 1955. W. Horace Lowder advised that he was not at that time in a position to commit himself to an examination of said records, and requested the agents to confer with the corporations' accountant. When the accountant was contacted the following day, he advised that no arrangements had been made with him for an examination of the records in question. The accountant further advised that he did not have sufficient space in his office for use of the agents in making the examinations.

On May 5, 1960, W. Horace Lowder advised the agents that he was refusing to make available any of the corporate books and records for more than the immediately preceding three years, and that he would not permit an examination of these books and records in his office, and would not permit the agents to take the books and records to their offices in the Post Office building at Albemarle, North Carolina, for an examination.

On May 6, 1960, pursuant to the provisions of Section 7602, Internal Revenue Code of 1954, 26 U.S.C.A. § 7602, two summonses were issued and served upon the respondent, W. Horace Lowder. One summons directed him to produce certain specified books and records of Lowder Farms, Inc., and the other directed the production of certain described books and records of All Star Mills, Inc. Both summonses required the production of said books and records at Room 1605, Johnston Building, Charlotte, North Carolina, on May 19, 1960. W. Horace Lowder appeared as directed in said summonses, but failed to produce all of the designated books and records. Generally, the summonses required the production of records of both corporations for the years 1950 through 1958. In some instances, no record was produced for the entire period, while in other instances records were only produced for the years 1956, 1957 and 1958. Many of the records not produced had been seen and examined by the agents between January, 1959, and July 10, 1959.

On July 1, 1960, a summons was issued and served upon W. A. Lowder directing him to appear and produce, on July 12, 1960, certain specified books and records of Carolina Mills, Inc. W. A. Lowder appeared as directed, but failed to produce many of the records specified. In some instances, records covered only the years 1956, 1957 and 1958, while in other instances records covered a slightly longer period of time. Certain vital records for some of the months during the years 1956, 1957 and 1958 were not

produced. Many of the records not produced were seen and examined by the agents during the months of March, April and May, 1959.

On June 24, 1960, pursuant to the provisions of Section 7604, Internal Revenue Code of 1954, 26 U.S.C.A. § 7604, these proceedings were instituted against W. Horace Lowder directing him to appear on July 25, 1960, and show cause, if any he had, as to why he should not be directed to comply in full with said summonses. On July 15, 1960, this proceeding was instituted against W. A. Lowder directing him to appear on the same date and show cause, if any he had, as to why he should not be directed to comply in full with the summons directed to and served upon him. By consent of counsel for the petitioner and the respondents, the proceedings against W. Horace Lowder and W. A. Lowder were consolidated for hearing.

At the hearing, which consumed more than two days, W. A. Lowder testified, in substance, that at the end of each year the books and records of Carolina Mills, Inc., were sent from Cheraw, South Carolina, to the corporation's auditor at Albemarle, North Carolina; that after the auditor had completed his examination of the records, and prepared the tax returns, the records were returned to him and stored at the office of Lowder Farms, Inc., and All Star Mills, Inc.; that after receiving the summons on July 1, 1960, he spent an hour or two examining the place where the records were normally stored, and that the records produced were all the records he could locate; that he did not ask anyone about a possible destruction of the records, but did know that in January, 1960, some of the records were moved in preparation for some new construction in the office of Lowder Farms, Inc., and All Star Mills, Inc.; that some of the records could have been destroyed; that all the records he could find were produced, and he was of the opinion that the records not produced were no longer in existence.

W. Horace Lowder testified, in substance, that he is a corporate officer of Lowder Farms, Inc., and of All Star Mills, Inc., and has general supervision over the keeping and disposal of records of both corporations; that he had no definite policy with respect to the time and method of disposing of records; that during the early part of 1960 he disposed of a number of corporate records to make room for office expansion; that all records of both corporations were either moved or disposed of at that time; that he did not make a list of the records disposed of, but as a general rule he disposed of records in boxes which appeared to be three or four years old; that he could not give any definite information with regard to the disposal of specific records; that he did not confer with his accountant or attorneys, or anyone else, in regard to disposing of records; that when the agents left in September they did not say they would return, and he was not told to keep or retain any specific records; that the agents would not reveal the purpose of their examination or the type of work they were doing; that after receipt of the summonses, he spent some 20 to 25 hours looking for the specified records, and that the records produced were all he could find; that in May, 1960, when records were requested for the calendar years 1952, 1953 and 1955, he did not tell the agents that any records had been destroyed; that in his search for the records specified in the summonses, he did not consult any of the office personnel, or request their assistance in locating the records, for the reason that he did not want to bother them; that he has produced all the records he can locate, and is positive that no additional records are in existence.

Additionally, the respondents offered the testimony of one of the bookkeepers for Lowder Farms, Inc., and All Star Mills, Inc., who stated that he knew some of the records were removed from the office during the early part of 1960. A truck driver for All Star Mills, Inc., testified that during the early part of 1960 he helped load some of the records on a truck, but did not have any personal

knowledge as to what happened to the records. The general manager of Carolina Feed Co., Inc., testified that he had been unable to locate any additional records in the office of that corporation.

Based on the foregoing facts, the petitioner contends that an order should issue directing the respondents to comply in full with the summonses. While the petitioner is unable to offer direct proof that any of the records not produced have been in existence since July 10, 1959, it is argued that, by applying the inference of present possession from proof of past possession, and considering the other inferences reasonably to be drawn from all the evidence, the court should find that the respondents still have some or all of the missing records in their possession.

The great difficulty presented by the petitioner's argument is the lapse of almost ten months from the date any of the missing records were seen until the date the summonses were issued. The Internal Revenue Service undoubtedly had good reasons for waiting that long to press the issue, but it is seriously doubted if the reported cases support a finding of present possession from proof of possession ten months before the issuance of summonses.

It is true that many other factors are present that would tend to strengthen and support an inference of continued possession. The three corporations had a gross income in 1959 in excess of eight million dollars. A competent certified public accountant was retained to examine the books and records and prepare the corporate tax returns, and was at all times available for consultation and advice. Notwithstanding the fact that both respondents knew their corporations were under investigation, they say they destroyed vital books and records, some even through the year 1958, without consulting their accountant or their attorney. Additionally, the destruction was indiscriminate in the sense that no list was made of records destroyed, and some vital records for the entire period are missing. W. Horace Lowder, for no explained reason, ordered one of the agents to leave his office and not return. He later refused to permit any of the agents to examine records in his office or to permit the records to be taken to the office of the Internal Revenue Service located in the same city for examination. At a time he now says he knew the records had been destroyed, he refused their production without revealing their destruction. For these and other reasons, the incredible explanations offered by the respondents make inescapable the conclusion that many of the missing records are either still in existence or were purposely destroyed to prevent their examination. This conclusion is strengthened by the fact that W. A. Lowder had paid a fraud penalty in 1952 on a deficiency assessment covering prior years.

But where the inference of continued possession has been sanctioned, the critical interval has only been from several days to a few weeks. United States v. Goldstein, 2 Cir., 1939, 105 F.2d 150, and In re Arctic Leather Garment Company, 2 Cir., 1937, 89 F.2d 781. There is language in Maggio v. Zeitz, 1948, 333 U.S. 56, 68 S.Ct. 401, 92 L.Ed. 476, which tends to indicate the presumption is stronger when applied to books and records than when applied to salable or or consummable commodities. Nevertheless, the majority opinion in United States v. Patterson, 2 Cir., 1955, 219 F.2d 659, seems to indicate that the presumption of continued possession is not sufficiently strong, under the factual situation here involved, to warrant a finding of present possession. The presumption, always strongest at the beginning, is diminished with the lapse of time, and is completely dispelled by long delay. Brune v. Fraidin, 4 Cir., 1945, 149 F.2d 325.

■ There is one other consideration worthy of note. An order requiring production would necessarily presuppose ability to comply, and would undoubtedly be followed by a contempt proceeding. If the evidence is not of such character as to justify an attachment for criminal

contempt, an order should not be entered requiring the respondents to turn over the missing documents.

Solely on the basis that the interval between the dates the missing records were last seen and the date the summonses were issued preclude the effective application of the presumption of continued possession, it is concluded that the relief sought in the petition should be denied.

Counsel for the respondents will present an order in conformity with this opinion.